[Civ. No. 773. Third Appellate District.—May 24, 1911.]

HUGHES BROTHERS, a Corporation, Respondent, v. THE RAWHIDE GOLD MINING COMPANY, a Corporation, Appellant.

APPEAL FROM ORDER GRANTING NEW TRIAL—MOTION UPON MORE THAN ONE GROUND—GENERAL ORDER—REVIEW.—Where the findings and judgment were for the defendant, and plaintiff in his notice of motion for a new trial, designated more than one ground for the motion, and the court made a general order granting a new trial to the plaintiff, if there is any ground upon which the court could reasonably, and in the exercise of a proper discretion, grant a new trial, the order granting it will not be disturbed upon appeal.

ID.—INSUFFICIENCY OF EVIDENCE TO JUSTIFY DECISION — POWER AND DUTY OF TRIAL COURT—APPRECIABLE CONFLICT—REVIEW UPON AP-

peal.—The trial court is not only authorized, but it is its duty, to grant a new trial whenever, in its opinion, the evidence upon which the former decision was based was insufficient to justify that decision; and its action is not open to review upon appeal if there be any appreciable conflict in the evidence.

Id.—General Order — Presumption upon Appeal — Statement of Counsel not Considered.—Where the order granting the new trial is general in its terms, and one of the grounds of the motion was insufficiency of the evidence, it must be presumed upon appeal that that was one of the grounds on which the motion was granted; and the mere statement of counsel as to the particular ground on which the order granting the motion was based cannot be considered in contradiction of such presumption.

Id.—Action of Debt on Legal Instrument—Conflicting Evidence as to Nature—Accepted Bill of Exchange — Agency for Collection—Support of Order.—Where, in an action of debt on a legal instrument, the evidence was conflicting as to whether it was a bill of exchange accepted by two parties in writing, or whether the defendant was merely made an agent to collect the money due to one of the parties, such conflict in the evidence is sufficient to make the court's order granting a new trial clear of just disturbance on appeal

APPEAL from an order of the Superior Court of Tuolumne County, granting a new trial.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Samuel M. Shortridge, and C. M. C. Peters, for Appellant.

J. B. Curtin, for Respondent.

HART, J.—In this action, the court below awarded judgment to the defendant. Thereafter the court granted the motion of plaintiff for a new trial, and it is from the order allowing said motion that this appeal is prosecuted by the defendant.

The grounds upon which said motion was made are: 1. Insufficiency of the evidence to justify the decision and judgment; 2. That the decision and judgment are against law.

The action is in debt and was brought to recover the sum of $531.75, alleged by the complaint to be due and owing plaintiff from the defendant.

The circumstances under which the alleged obligation arose, according to the averments of the complaint, are, in brief, as follows: "That the defendant corporation was indebted to a certain Charles Zany and one B. A. Valverde in a sum of money exceeding in amount the sum sued for; that said Zany was indebted to the plaintiff in the said sum of $531.75, and that the former, for the purpose of paying said indebtedness, executed an acceptance of a bill of exchange drawn on said Zany and in favor of plaintiff, and the same was delivered to the defendant. Said bill was in the following language:

"531.75.                    Oakdale, Cal., Feb. 17, 1909.

"On demand pay to the order of Rawhide Gold Mining Co., Five hundred thirty-one and 75-100 Dollars. Value received and charge the same to account of        HUGHES BROS.

"To Charles Zany, Quartz Mt."

Thereafter, said Zany and Valverde executed and delivered to the defendant the following order in writing:

"Feb. 25th, 1909.

"To the Rawhide Gold Mining Company:

"Please pay to Hughes Bros., a corporation, $531.75 and charge the same to our account.

"CHAS. ZANY.
"B. A. VALVERDE."

It is alleged that the defendant "promised and agreed to pay the same to plaintiff, but has since neglected and refused to do so." It is further alleged that the defendant has refused to return said draft to plaintiff, although the latter has demanded its return since defendant's refusal to pay the same.

The court, among other matters, found that the defendant "received and took said first mentioned draft or bill of exchange and said second mentioned draft or order from said plaintiff herein for the purpose of the collection thereof for said plaintiff, and not otherwise, and in pursuance with an understanding and agreement had between said W. A. Nevills, president of said defendant, and said W. J. Hughes, president of plaintiff, that the same was to be held out of any moneys found due from defendant to Charles Zany in a settlement of accounts thereafter to be had between said defendant and said Zany"; that "said defendant upon either of said above-

mentioned dates, or at any other time, never promised or agreed to pay said plaintiff said sum of $531.75, or any other sum, except under the conditions and agreement mentioned in paragraph 111 hereof''; that ''no settlement of the accounts between said Charles Zany and said defendant had been had up to the commencement of this action, nor has any settlement of said accounts been had up to the trial of this action, and up until said trial said defendant had not collected anything on account of the said draft or bill of exchange or of said draft or order hereinabove set forth, and the said accounts between said Charles Zany and B. A. Valverde and said defendant were at the commencement and trial of this action still in process of litigation and in the courts undetermined finally.''

The position of the appellant in this case is as stated in the foregoing findings, the contention being (to be more explicit) that the evidence without conflict shows that the agreement between plaintiff and defendant was simply that the former would assign to the latter its claim against Zany for the purpose of its collection only, and that defendant would collect the same if, upon the final settlement of the accounts between it and Zany and Valverde, there was found to be due from defendant to said Zany and Valverde a sum of money from which the claim could be paid in whole or in part.

The sole question to be examined and decided here is whether the court acted within its discretion or abused such discretion in granting the order appealed from.

Upon what particular ground, if upon only one of the two upon which the motion for a new trial was made, or whether upon both said grounds the motion was granted by the court, does not appear from the record. It is, however, asserted by counsel for the respondent that the court, in deciding the case for defendant, stated from the bench that ''it could not understand how the plaintiff could maintain an action of debt to recover that much money; that it evidently had mistaken its remedy and that it should have sued in trover for conversion of that sight draft, alleging its value, etc.'' From this statement in counsel's brief, the implication is that the court awarded judgment to defendant solely on the ground that the remedy of plaintiff was in conversion and not in debt or *assumpsit*. Of course, if this be true, evidently

in the judgment of the court, as evidenced by its order granting a new trial, there was sufficient evidence to establish the claim of plaintiff, if the theory of the plaintiff as to the relations between it and the defendant were, by reason of the transactions set forth in the complaint, those of creditor and debtor, respectively.

But since, as seen, there is nothing in the record disclosing the specific reasons prompting the court to grant the order appealed from, we cannot, obviously, consider the mere statements of counsel as to the specific ground upon which the motion was allowed.

"Where, however, there is stated in the notice one ground of several upon which the court could reasonably, and in the exercise of a sound discretion, grant a new trial, the order will not be disturbed." (*Edinger* v. *Sigwart,* 13 Cal. App. 667, 672, [110 Pac. 521].)

In *Newman* v. *Overland Pac. Ry. Co.*, 132 Cal. 74, [64 Pac. 110], where the defendant's notice of motion designated as the grounds upon which the motion would be made, "insufficiency of the evidence to justify the decision," and "errors of law occurring at the trial," and, as here, the statement of the case upon which the motion was heard contained specifications of particulars wherein it was claimed that the evidence was insufficient, and of various errors of law upon which the defendant relied, it is held: "The rule is firmly established that the superior court is not only authorized, but that it is its duty, to grant a new trial whenever, in its opinion, the evidence upon which the former decision was made was insufficient to justify that decision. Its action in granting a new trial upon this ground is so far a matter within its discretion that, if there is any appreciable conflict in the evidence, it is not open to review (*Kauffman* v. *Maier,* 94 Cal. 269, [29 Pac. 481, 18 L. R. A. 124] ; *Domico* v. *Casassa,* 101 Cal. 441, [35 Pac. 1024] ; *Harrison* v. *Sutter Street Ry. Co.,* 116 Cal. 156, [47 Pac. 1019]) ; and when this is made one of the grounds of the motion, although other grounds are also presented, if the order does not by direct language exclude this from the grounds upon which the motion is granted, it will be assumed that it was one of the grounds for making the order, and the order will accordingly be affirmed."

As the order here does not, as seen, show that the court excluded from consideration, in granting the motion, the ground that the evidence is insufficient to support the decision, we may assume that this was one of the grounds upon which the motion was granted.

There is, in our judgment, a conflict in the evidence as to the nature of the legal relations established between the plaintiff and the defendant by the transactions described in the complaint and referred to in the findings of the court hitherto quoted herein. While it is true that, in giving his testimony, the president of plaintiff, who personally conducted on behalf of the latter the transactions referred to in the complaint, made some statements which bear the appearance of being inconsistent with the theory upon which the complaint is drafted and the cause, on plaintiff's part, was tried, there is, nevertheless, *some* evidence tending to disclose that the two written instruments pleaded in the complaint were intended, respectively, as a bill of exchange and an acceptance thereof by the drawee. That such was intended to be the legal effect of said instruments, the language thereof seems quite clearly to imply. Zany's acceptance of the bill drawn by the plaintiff on the defendant is, it occurs to us, plainly evidenced by the order or draft on defendant executed by Zany and Valverde, in favor of plaintiff, on the twenty-fifth day of February, 1909, for the precise sum specified in the bill.

By the law of this state it is provided that an acceptance of a bill of exchange must be in writing, but that it is a sufficient acceptance if the acceptor writes "his name across the face of the bill, with or without other words." (Civ. Code, sec. 3193.) The manner of acceptance thus authorized is, obviously, merely permissive in legal effect—that is, the language that acceptance *"may be made"* as indicated does not exclude any other mode of acceptance so long as it is in writing and clearly discloses an intention on the part of the drawee to accept. (See 4 Am. & Eng. Ency. of Law, 2d ed., p. 207, and cases cited in footnotes; 1 Parsons on Bills and Notes, p. 281 et seq.)

But we will briefly examine the testimony.

It appears that Zany maintained a boarding-house at the mine of the defendant for the purpose of accommodating in

that regard the employees of defendant; that the latter had entered into an arrangement with Zany by which the former was to pay the latter for the boarding of its said employees. Zany, as seen, was indebted to the plaintiff corporation, which was then engaged in the general merchandising business at Oakdale, in the sum mentioned in the said alleged bill of exchange described in the complaint. Hughes, president of plaintiff, having received information that Zany was about to retire from or abandon the boarding-house business, met Captain Nevills, president of defendant, at Oakdale and initiated negotiations by which he hoped to ultimately secure the payment of his claim through defendant. Nevills agreed to furnish information to Hughes as to the movements of Zany. After some correspondence between the secretary of defendant and Hughes, in which the latter was finally advised that, to protect himself against loss, he would have to take some steps looking to the collection of his account against Zany, as the latter was about to quit business, Hughes drew the order on Zany described in the complaint as a bill of exchange. It seems that Valverde, a creditor of Zany, had threatened to garnish the money due the latter from defendant, but finally secured from Zany an assignment to him of Zany's claim against defendant. Nevills said to Hughes that, before defendant would accept the order or bill of exchange, he (Hughes) would have to deliver to said defendant an order or an acceptance executed by both Zany and Valverde. This suggestion Hughes followed and procured the order signed and executed by Zany and Valverde, already mentioned, and delivered the same with the bill of exchange to defendant. Hughes thereafter frequently communicated with the officers of defendant, inquiring when it was probable that he would receive the money due plaintiff, and, after much correspondence on the subject, Hughes, for plaintiff, demanded from defendant a return of the bill of exchange and the acceptance thereof by Zany and Valverde. Defendant refused this demand, whereupon plaintiff instituted an action in claim and delivery for the recovery of said bill. (This suit was subsequently dismissed on plaintiff's motion.)

It further appears that Valverde sued defendant to recover the money it had in its possession due Zany and of which he claimed ownership by virtue of the said assignment of

said money to him by Zany. The defendant answered Valverde's complaint, and, among other averments, pleaded as a setoff the bill of exchange mentioned in the complaint.

In its answer to plaintiff's complaint, in the action for the recovery of said bill, the defendant alleged: "That heretofore, to wit, about the twenty-third day of February, 1909, for value and in the due and ordinary course of business the said Hughes Brothers, plaintiff above named, sold, assigned and transferred the account and indebtedness mentioned in Paragraph 2 of said complaint to the defendant, The Rawhide Gold Mining Company, which said company was the owner and holder thereof at the time of the commencement of the above-entitled action, and ever since has been and still is the owner and holder of said assigned claim as aforesaid."

The record shows that the sheriff took from the possession of defendant said bill upon a process issued upon plaintiff's complaint in replevin, but that, subsequently, defendant, demanding redelivery of the bill to it, executed to the sheriff an undertaking as required by section 514 of the Code of Civil Procedure, and thereupon the sheriff redelivered said bill into its possession.

Hughes testified that, after the execution of the bill of exchange, he met Nevills at the depot at Jamestown; that "he told me that Zany had turned everything over to Valverde, and that Valverde had sued him (Nevills) and he wanted me to go up with Mr. Peters (defendant's attorney) and commence suit against Zany, attach him. . . . I said, 'I will go and get an order.' He said, 'It will do no good.' . . . I went over and met Zany and Valverde together. I says to Zany, 'To save any trouble, you give me an order on the Rawhide mine, Mr. Valverde, too, both of you sign it,' because Valverde was suing him; it was safe both ways. I went to the telephone and called up Mr. Nevills and told him I had this order. He says, 'If his lawyer says it is all right, I will accept it. If Mr. Peters says it is all right it would be all right.' I got the order and came back; my bookkeeper made it and I brought it with me." He further testified that he showed the order to Mr. Peters, defendant's attorney, and that the latter pronounced the order to be sufficient and that defendant could pay it if it desired to. "I delivered these two

documents to Mr. Lang [secretary of defendant] and from
that time until now they have not been in my possession.''

In reply to the contention of defendant, as shown by the
testimony of Nevills that the order was received by the de-
fendant only for the purpose of collecting it for plaintiff,
and that it was agreed that plaintiff was to wait for the money
until a settlement between Zany and defendant was had,
Hughes testified that no such understanding was had between
them; that after he delivered the bill and order to defendant
he expected the latter to pay him the money called for by
said bill, and that that was the understanding.  He testified
that when it appeared to him, after repeated demands on de-
fendant for payment without success, that he was not going
to receive the money, he demanded the redelivery of the bill,
but that defendant refused to deliver possession of the same
to plaintiff, and that thereupon he instituted the action to
recover its possession to which we have made reference.

Of course, the testimony produced by defendant contradicts
plaintiff's testimony, the theory of the defendant being, as
seen, that it was merely made an agent by plaintiff to collect
the money due the latter from Zany.  This testimony, how-
ever, only results in a conflict—at least ''an appreciable con-
flict''—upon the vital proposition in the case, and, as we
have seen, under such circumstances we cannot say that the
court's decision granting a new trial involves an abuse of
the discretion which it is legally authorized to exercise in pass-
ing upon motions of this kind.

But counsel for appellant insist with much vigor that there
is no conflict; that the testimony is all one way, and that it
conclusively discloses that the defendant was merely the agent
of plaintiff for the collection of the money from Zany.  In
support of this contention, attention is called to the averments
of the complaint in the action by plaintiff to recover posses-
sion of the bill of exchange or order from defendant setting
forth plaintiff's ownership of said bill or order.  But those
averments, considered as evidence in the case, as well as the
fact of the bringing of that suit by plaintiff, were, like all
the testimony in the case, to be given such weight, if any,
as the court deemed them entitled to.  It would not be a far-
fetched conjecture to suggest that, in considering the motion
for a new trial, the court concluded that the unqualified

declaration in defendant's answer to plaintiff's action to recover the bill that it was the owner and holder thereof—that said bill had been sold and assigned to it by plaintiff—fully impeached or overcame plaintiff's averment of ownership. Besides, the court perhaps reached the conclusion that defendant's averment of ownership in its answer to that complaint of plaintiff was corroborated by the fact that, in the action against it by Valverde, it set up the bill drawn by plaintiff and accepted by the drawee, Zany, as an offset to any claim Valverde might undertake to establish against defendant on account of its indebtedness to Zany. In any event, it was, as we have suggested, for the court, in its consideration of the application for a new trial, to appraise the probative value of the testimony, and we doubt not that, as before declared, there is a sufficient conflict in the evidence upon the question whether the instrument was a bill of exchange or a mere assignment of the claim therein specified to defendant for collection only to render the court's order granting a new trial clear of just disturbance by this appeal.

There are some other legal propositions, only, however, in support of the main question submitted here, discussed in the briefs. In view of the conclusion at which we have arrived, these need not be noticed.

The order is affirmed.

Chipman, P. J., and Burnett, J., concurred.