[Civ. No. 975.   Third Appellate District.—December 5, 1912.]

## F. H. CONWELL, Appellant, v. MARY E. VARAIN, also known as MARY E. TRUJILLO, wife of J. E. Trujillo, Respondent.

ACTION FOR SERVICES FOR SALE OF MINING PROPERTIES—QUESTION AS TO INCLUSION OF PARTICULAR MINE—SUBMISSION BY CONSENT ON EXPERT EVIDENCE—DISCRETION AS TO NEW TRIAL.—In an action for compensation for services for the sale of two separate parcels of mining property, one of which was claimed by defendant not to have been included in the original agreement, but afterward inserted, and the court, by consent of counsel, appointed an expert, who testified that such mine was originally included in the agreement, because underlying the name of the other mine so included, it is held that the court did not abuse its discretion in granting a new trial to the defendant.

ID.—EFFECT OF STIPULATION OF COUNSEL—UNUSUAL AND IMPROVIDENT CHARACTER—INJUSTICE GROUND FOR NEW TRIAL.—Assuming that counsel had authority to stipulate as to the result of the action, within the scope of their general authority, yet the stipulation is regarded as so unusual in its nature, and so improvident in its scope, that it is manifest that the trial court, upon further consideration after the judgment was rendered and entered, reached the conclusion that it would be unjust to compel the defendant to be bound by its terms, and therefore in the interest of justice,. granted defendant's application for a new trial.

ID.—STIPULATION AS TO CONCLUSIVENESS OF EXPERT EVIDENCE NOT TO BE TOLERATED.—It is held that a stipulation as to the conclusiveness of expert evidence to determine the merits of an action is not to be tolerated, in any case, much less in one involving valuable property rights in a large sum of money, which would result in an arbitration, rather than an impartial trial of an action upon its merits.

ID.—DUTY OF COURTS AS TO RIGHTS OF LITIGANTS—EX PARTE OPINION NOT TO CONTROL.—It is obviously the first duty of the courts to see that litigants shall have their rights judicially determined only after a fair and impartial trial according to the mode prescribed by law.   To place a litigant's rights in a trial thereof at the mercy of the *ex parte* opinion of any person, however well qualified to speak on the subject to which his opinion relates, is not to give such litigant's rights a fair and impartial trial according to the prescribed forms by which issues of fact are authorized to be tried.

ID.—NEW TRIAL GRANTABLE FOR INSUFFICIENCY OF EVIDENCE.—The court was authorized to grant a new trial for insufficiency of the

evidence to sustain the findings of the court. Where the court is of opinion that the weight or preponderance of the evidence is opposed to the findings it is the duty of the court to grant a motion for new trial.

APPEAL from an order of the Superior Court of Mariposa County granting a new trial. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

John A. Wall, for Appellant.

J. B. Curtin, and R. B. Stolder, for Respondent.

HART, J.—This action was brought by the plaintiff to recover the sum of two thousand dollars, alleged to be due the plaintiff from the defendant under a contract whereby, it is alleged, the latter employed the first named to procure for her a purchaser of certain mining property, situated in Mariposa County.

Judgment passed for the plaintiff in the sum sued for. In due time, the defendant moved for a new trial and the court granted the motion.

This appeal is by the plaintiff from the order granting said motion.

The grounds upon which the motion for a new trial was pressed were: 1. That the evidence was insufficient to justify the decision, findings, and judgment; 2. That the decision and judgment are against law; and 3. Errors of law occurring during the trial and excepted to by the defendant.

The instrument upon which the plaintiff declares is in the form of a power of attorney, and it purports to confer upon one S. Carlon full power "to grant, bargain, sell, remise, release, convey and quitclaim to whom and upon such terms as our attorney may deem best, all of our right, title and interest, estate, claim and demand, both in law and equity, as well in possession as in expectancy of, in or to" the following mines: The Big Bonanza, the Gillett mine, Mauneilla Gulch and No. 2, and the Blue Lead.

It appears that the defendant, although, as seen, purporting by said power of attorney to confer upon said S. Carlon the authority to act as her attorney-in-fact for the purpose

of selling the mines designated in said instrument, in reality intended thereby to confer such authority upon the plaintiff, but, it seems, the latter, being the notary public before whom the acknowledgment of the execution of the power was to be taken, entertained serious doubt whether such an instrument would be valid where it is acknowledged before the person as a notary public in whom rights thereunder are thereby to be vested. It is, however, further made to appear that said instrument was delivered by the defendant to the plaintiff and that no objection was raised at the trial that the contract or power of attorney was not to vest in the latter the authority of an attorney-in-fact for the purposes specified in said instrument. To the contrary, as we shall presently see, the trial was conducted by both sides upon the assumption or the theory that the contract was between the plaintiff and the defendant, and that said Carlon was in no way connected therewith.

The power of attorney does not itself provide for compensation to be paid to the plaintiff for his services in selling the property described therein, but the complaint alleges that the defendant agreed to allow and pay to plaintiff, as his compensation for procuring a purchaser of the Big Bonanza mine, any sum of money for which he might be able to sell said mine over and above the sum of eight thousand dollars, and that plaintiff succeeded in finding, in the person of one George E. Stayton, a purchaser of said mine able, ready, and willing to pay the sum of ten thousand dollars therefor, and that Stayton did in fact purchase said mine at said price. But it appears that the defendant claimed at the trial that the Big Bonanza mine was not mentioned or written in the power of attorney at the time of the execution and delivery thereof to the plaintiff, but that, after the execution and delivery of the power, some one, without her authority, sanction, or consent, inserted the name of said mine therein. And this contention, it seems, involved the sole and only point of controversy between the parties at the trial. In other words, the single point upon which the parties were widely divergent was whether the plaintiff was in truth and in fact authorized by the defendant, under the terms of said instrument as it was signed and delivered by the latter to him, to find a purchaser of the Big Bonanza mine.

The plaintiff testified that the words, "Big Bonanza Mine" were written in the instrument, just above the words, "The Gillett Mine," at the time the defendant signed and delivered it to him; that no change whatsoever was made in the writing contained in said instrument after it was so signed and delivered into his possession.

Mrs. Varain, the defendant, testified, as above indicated, that the words, "Big Bonanza Mine," were not written or contained in the power of attorney when she signed and delivered that instrument to the plaintiff, and that said words were not therein inserted upon authority from her or with her consent. She further testified that the instrument did contain the name of the Gillett mine when she delivered the document to the possession of the plaintiff.

The foregoing constituted, in substance, all the direct testimony upon that point, and, manifestly, there thus arose thereon a sharp conflict between the witnesses. It was, therefore, conceived by the court and counsel to be the more satisfactory course to invoke the services of a professional expert in handwriting, and to his opinion submit the question whether there was evidence on the face of the instrument itself of the insertion therein of the words, "Big Bonanza Mine," after the power had been signed by the defendant. "Whereupon," quoting from the record, "the respective counsel for the parties stipulated and agreed, in open court, that the cause be submitted to the court for decision upon the one single question of fact as to whether the loop in the 'z' in the name 'Big Bonanza Mine' in said 'Plaintiff's Exhibit A' (the power of attorney) was above or beneath the line crossing the two 'Ts' in the name 'Gillett Mine,' which is immediately under the name 'Big Bonanza Mine' in said 'Exhibit A,' thus:

"It was further stipulated and agreed that the court should have the assistance of a professional expert in handwriting, of the court's own choice, without the knowledge of either of the parties hereto—the written opinion and photographic exemplars made by said expert in handwriting to the court

should be received in evidence in the cause on behalf of both the respective parties hereto. . . . It was further stipulated and agreed that if it appeared by the expert's opinion that the loop of the 'z' in the word 'Bonanza' was under the line crossing the two 'Ts' in the word 'Gillett,' this would be conclusive proof that the name, 'Big Bonanza Mine,' was in the paper at the time defendant signed the same and delivered it to plaintiff, and then that plaintiff had proven all the allegations of his complaint and plaintiff was entitled to judgment against defendant for the sum of two thousand dollars under either cause of action set forth in the complaint, and that judgment for plaintiff against defendant in the sum of two thousand dollars should be awarded plaintiff, free and clear of any and all objections or exceptions of any kind or nature whatsoever by defendant or on behalf of any person."

In accordance with the foregoing stipulation, the court submitted the power of attorney to Theodore Kytka, a professional expert in handwriting, for examination and a report of the result thereof as to the proposition with reference to said instrument as set forth in said stipulation. Kytka, having subjected the instrument, or that portion thereof pertinent to the terms of the stipulation, to an examination by means of the tests usually employed by experts in handwriting, in due time returned to the court a written report in which he expressed an unqualified opinion that the letter "z" in the word "Bonanza" lay underneath the line crossing the two "Ts" in the word "Gillett."

Thereafter, and acting upon the stipulation above referred to the court rendered and entered its judgment in favor of the plaintiff for the sum of two thousand dollars, as prayed for in the complaint.

Upon the record as thus made up, the question presented here for decision is whether the court below abused its discretion in granting the order from which this appeal is prosecuted.

The stipulation above referred to assumed and, indeed, in effect conceded, that all the material allegations of the complaint, except insofar as they implied that the Bonanza mine was included in the contract with plaintiff and to which point the stipulation solely related, were satisfactorily proved. The effect of the stipulation, in other words, was to eliminate

from the controversy the evidence as to all the material facts but the single one to which it related. It, therefore, follows that the specifications of the insufficiency of the evidence to support other material findings than the one deduced from the evidence resulting from said stipulation cannot be considered or reviewed.

One of the grounds upon which a new trial was asked in this case is, as before shown, that the evidence is insufficient to support the findings, and it is well settled that, where a new trial is granted on such ground, the order will stand unless it is made clearly to apear that the trial court, in granting it, has abused its discretion. Indeed, where the court is of the opinion that the weight or preponderance of the evidence is opposed to the findings, it is its duty to grant a motion for a new trial. (*Bledsoe* v. *De Crow,* 132 Cal. 313, [64 Pac. 397]; *Clark* v. *Rauer,* 2 Cal. App. 259, [83 Pac. 291]; *Central Trust Co.* v. *Stoddard,* 4 Cal. App. 648, [88 Pac. 606]; *Thompson* v. *Wheeler,* 5 Cal. App. 196, [89 Pac. 1065]; *Hughes Bros.* v. *Rawhide Mining Co.,* 16 Cal. App. 297, [116 Pac. 969]; *Bjorman* v. *Fort Bragg Redwood Co.,* 92 Cal. 500, [28 Pac. 591].)

While upon the face of the record in the case at bar, it might well be held that the court, in granting defendant's motion for a new trial, transcended the discretion committed to trial courts in such case, there are certain considerations presented here which inspire in this court a disinclination to interfere with the action of the court below in ordering a new trial.

In his brief counsel for the respondent, who was not at first connected with, and, therefore, did not participate in, the trial of the cause, states that, after the rendition and entry of judgment, he was employed by the defendant to prepare and press a motion for a new trial. He further declares that the testimony received at the trial was not taken down by a short-hand reporter or at all, and that, upon being retained as above stated, he procured from the clerk of the court in which the action was tried a statement of that official's recollection of the testimony as it was given. From the testimony so obtained, said attorney prepared a proposed statement for a new trial, filed the same and served a copy thereof on the attorney for the plaintiff. In due time the

latter served a proposed amendment to said statement, which said amendment consisted in a motion to strike out the whole of the proposed statement and to substitute in lieu thereof the statement of the testimony which now, so far as the evidence is concerned, constitutes the record upon which the order granting the new trial was predicated.

It is claimed by counsel for the appellant that the proposed statement of plaintiff was stricken out because it involved an incorrect synopsis of the evidence. This may be true, but, under the stipulation referred to above and which constitutes the most important part of this record, even if the proposed statement had contained a strictly accurate resumé of the evidence, it would have been the duty of the court to have stricken it out as wholly immaterial, so far as it related to points other than that upon which the stipulation provided that the decision of the cause should hinge.

We have thus given briefly that part of the history of the trial which is *de hors* the record, but which is disclosed by the briefs of counsel, the verity of which, however, is not disputed, merely to illustrate the uniqueness of the situation presented here, and, perhaps, in discovering, to some extent, the precise motive influencing the judge of the court below, upon reflection, in the exercise of the discretion confided to trial courts in the matter of allowing or disallowing new trials, to order a retrial of the issues presented by the pleadings in this action.

Now, one of the points made by counsel for the respondent is that the stipulation into which the parties entered and upon which the decision of the issues was made to depend, was void, or not binding upon the defendant, because it neither appears that the latter filed an agreement with the clerk authorizing his attorney to make such stipulation, nor that such an agreement was entered in the minutes of the court. (Code Civ. Proc., sec. 283, subd. 1.)

But we are not prepared either to affirm or deny, nor, for the purposes of this case, is it deemed necessary to decide, the proposition whether the stipulation referred to constitutes one of "the steps of an action or proceeding" in order to take which an attorney must first obtain from his client special authority evidenced in the manner prescribed by the section of the code above cited, or whether it constitutes an

act within the scope of the general authority of an attorney-at-law over his client's cause during the progress of the trial thereof. For, even assuming that the attorney had the authority to make the stipulation as one of the ordinary acts within the scope of his general agency or authority, we regard the stipulation as most unusual in its nature and so improvident in its scope that it is manifest that the trial court, upon further consideration of it after the judgment was rendered and entered, reached the conclusion that it would be unjust to compel the defendant to be bound by its terms, and, therefore, in the interest of justice, granted his application for a new trial.

It is not an unusual practice, nor one beyond the general authority of an attorney, to stipulate, during the progress of a trial, that a certain absent witness, if present at the trial, would give certain testimony essential to his adversary's case or defense, or to agree to the recitals of a deed or some public record which it might be impossible, for any reason, or inconvenient to produce in court; but it is, as before declared, and it should be, a most unusual practice for an attorney to stipulate that the unsworn statement of a person as to a fact without the proof of which the plaintiff could not sustain his action or the defendant his defense should be accepted as *conclusive evidence* of the truth of all the material allegations of the complaint or of the answer. And the more startling is such a stipulation where, as is true of the one in the case at bar, it involves an agreement that, as to the all-important fact to which it relates, the mere *opinion* of a person, although an expert on such subjects, shall be conclusive of its verity, provided such opinion coincides with the plaintiff's theory of the case.

We have no disposition to indulge in a general animadversion upon opinion testimony. Such evidence often becomes absolutely necessary in the proof of an essential fact, and it is always to be given such weight as it appears in each case to be justly entitled to; but it ought not to be necessary to say that when that character of testimony is relied upon or becomes necessary in the proof of a fact which goes to the very gist of the main point of controversy in an action at law, it should make its appearance in the record in the highest garb known to the law and under such circumstances as

that it may be rebutted, if it can be, or its accuracy tested by the methods usually invoked for that purpose. Therefore, no such stipulation or agreement by counsel as the one involved here should be tolerated in any case, much less one involving valuable property rights or, as here, a large sum of money. A trial thus conducted is in effect more in the nature of an arbitration than a trial, but even less satisfactory than the former method of settling disputed questions of fact.

It is obviously the first duty of the courts to see that litigants shall have their rights judicially determined only after a fair and impartial trial according to the mode prescribed by law. To place a litigant's rights in a trial thereof at the mercy, so to speak, of the *ex parte* opinion of any person, however well qualified such person may be to speak on the subject to which his opinion relates, is not to give such litigant's rights a fair and impartial trial according to the recognized or prescribed forms by which only issues of fact are authorized to be tried.

We doubt not that the court below, after that careful reflection which is afforded to trial courts by a motion for a new trial, reached the conclusion that the scope of the stipulation was entirely too far-reaching, and calculated to prevent a fair and proper consideration of the merits of the case. At all events, it is manifest that the judge regarded it as not involving the proper way in which to try important questions of fact, and considered it to be in the interest of justice to submit those questions to a retrial in the usual and proper mode.

We have not been cited to, and are unable, after some independent investigation, to find any case in California, or from other jurisdictions, which, in its facts, is precisely similar to this, but in *Harvey* v. *Thorpe*, 28 Ala. 250, [65 Am. Dec. 344], where the attorney for the defendants signed an agreement admitting certain material facts in the case, and from the consequences of which agreement the defendants succeeded in relieving themselves at the trial, the court said: "Conceding, so far as the present case is concerned, that attorneys may bind their clients by such admissions as were here made, it is only necessary to observe that where they are made improvidently and by mistake, the court, by means of its coercive powers over its own officers, has authority to

relieve against the consequences of the admission, regulating its action in this respect with a just regard for the rights of both parties, which it can do by setting aside the agreement upon terms which will meet the justice of the particular case,'' citing 1 Greenleaf on Evidence, sec. 206.

It is true that in that case the court was dealing with an objection to the action of the trial court in permitting the defendants to introduce evidence in opposition to their agreement or admissions; but upon the point under consideration we are unable to draw any distinction in principle between that case and this. The stipulation in the case here did not and could not have the effect of binding the trial court or concluding it in the exercise of its right to nullify the effect of the agreement by allowing the defendant to introduce proof in opposition thereto. And had the court refused to accept as conclusive proof of the allegations of the complaint the opinion of the expert and have allowed the defendant to introduce counter expert or other proof upon the question submitted to the arbitrament of the expert, such action on the part of the court could not upon any just reason be held to have constituted an abuse of its discretion in such case. It would be difficult to mark any reasonable line of distinction between the action of the trial court in that respect during the trial and its action, bringing about exactly the same result, in granting a new trial after a review of the case upon a motion for that purpose.

Our conclusion is that the order granting a new trial was but the result of the exercise of that power over causes and the action of the parties thereto which it is intended that trial courts shall possess and judicially dispense on all proper occasions in order that fair and impartial trials of issues of fact may be had. In other words, it has not been made to appear that the granting of the order was in excess of a sound judicial discretion.

The order is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 3, 1913.