[Civ. No. 15135.  Second Dist., Div. Two.  May 27, 1946.]

CAROL ANN BERRY, a Minor, etc., Respondent, v. CHARLES SPENCER CHAPLIN, Appellant.

Wright & Millikan, Loyd Wright, Charles E. Millikan and S. Earl Wright for Appellant.

Joseph Scott, Cuthbert J. Scott, A. H. Risse and J. Howard Ziemann for Respondent.

WILSON, J.—This is a filiation proceeding commenced under sections 196a and 231 of the Civil Code by the grandmother of plaintiff as guardian *ad litem* prior to plaintiff's birth in which a judgment was prayed that defendant be declared to be the father of plaintiff, and that he be required to pay for medical care during pregnancy and birth for the mother of plaintiff, and for the support of plaintiff after birth, together with attorneys' fees and costs.

Following the commencement of the action a stipulation was signed by the guardian *ad litem* and the attorneys then representing her and plaintiff, and by defendant and his attorneys, which recites the claim of Joan Berry, the mother of the

prospective child, that she was then with child begotten by defendant on or about December 20, 1942, and the denial of defendant that he was the father of said child. The stipulation, the details of which will be stated hereinafter, provides for the making of tests of the blood of the child, of Joan Berry, and of defendant. Said stipulation was approved by the Honorable William S. Baird, a judge of the superior court. After the birth of the child blood tests were made by physicians, chosen as provided in the stipulation. They unanimously reported their conclusion from the tests that defendant was not the father of the child. Counsel who at that time represented plaintiff did not, as provided in the stipulation, file a dismissal of the action upon the receipt of said report. Thereupon defendant made a motion for dismissal based upon the terms of the stipulation and the physicians' report. Counsel who now represent plaintiff were substituted for the attorneys who commenced the action and who entered into said stipulation, and the present guardian *ad litem* was substituted for the grandmother. The motion to dismiss was heard by the Honorable Stanley Mosk, a judge of the superior court. No evidence was offered at the hearing of the motion concerning the justness or fairness of the stipulation to the minor. Judge Mosk denied the motion on March 8, 1944. Defendant then answered denying the allegations of the complaint and setting up as an affirmative defense the stipulation to which reference has been made, the report of the physicians, the payment of the sums which he agreed in the stipulation to pay, and alleging that by reason of the stipulation, the physicians' report, and the payment of said sums, plaintiff was estopped to proceed with the action. The case came on for trial before the Honorable Clarence L. Kincaid, whereupon, on motion of defendant, his special defense was considered and ruled upon before the case proceeded to trial. Again no evidence was presented as to whether the stipulation was for the best interests of the minor. The court ruled that "the first affirmative defense herein which is a plea in bar to the further prosecution of the action is denied."

The case was tried before a jury which rendered a verdict that defendant is the father of plaintiff. A judgment so decreeing was entered in accordance with the verdict and adjudging that defendant pay to the guardian *ad litem* the sum of $75 per week for the support and education of the child during her minority, or until the further order of the court, and the sum of $5,000 attorneys' fees.

Defendant has appealed from the whole of the judgment except the portion requiring the payment of said sum as attorneys' fees.

(Plaintiff has appealed from those portions of the judgment awarding said amounts for her support and maintenance and for the fees of her attorneys, claiming that both are insufficient. Her appeal is covered by a separate opinion this day filed (*post,* p. 669 [169 P.2d 453]).)

1. *Did the court err in denying defendant's motion to dismiss the action?* The stipulation to which reference has been made contains the following, among other provisions: That subsequent to the making of said claim by Joan Berry defendant voluntarily agreed to pay to her the sums of money set forth in the stipulation for medical care and for her support and for all hospital and medical expenses necessary for her proper care during the period of her pregnancy and confinement and attendant upon the birth of the child, upon condition that she would voluntarily submit said child after its birth to medical tests for the purpose of determining its paternity and that she would make herself and said child available at all times so that said tests could be made by competent medical experts; that an order be made by the superior court whereby defendant shall be required to pay to the guardian *ad litem* the amounts set forth in the stipulation for said purposes, and that attorneys' fees in the sum of $5,000 shall be paid directly to the attorneys for plaintiff; that if the action shall be tried defendant shall pay an additional sum of $5,000 as attorneys' fees; that the action shall not be brought to trial until at least four months after the birth of the child and not until appropriate tests shall have been conducted as provided in the stipulation; that after said child shall have lived for a period of not less than four months it shall be made available for the purpose of having such tests made; that one physician shall be named by defendant, one by the guardian *ad litem,* and the two physicians so chosen shall select a third "who shall be especially skilled in such matters, who shall make a blood test or other tests accepted by medical science for the purpose of proving and establishing paternity, and who shall report their findings and conclusions with respect to the paternity of said child to the said guardian *ad litem* and to the defendant"; that said Joan Berry shall be bound by said stipulation as if she were the plaintiff and real party in interest; that defendant, by entering into the stipulation, shall in

no way be deemed or construed as thereby admitting any allegation in the complaint, but on the contrary denies that he is or could be the father of the child.

The following paragraph contains the provision under which defendant claims that, by reason of the report of the physicians, the dismissal of the action is made mandatory:

"It is further stipulated that in the event two of said physicians shall determine, as the result of said test or tests that the defendant herein is not the father of said child of Joan Berry, then and in such event the above entitled action shall be forthwith dismissed, with prejudice, and the defendant herein shall not thereafter be obligated to make any other or further payments in the above entitled action for any purpose whatsoever. In the event plaintiff's attorneys of record shall fail or refuse to file with the clerk of the above entitled court an order for the dismissal of said action with prejudice, under the circumstances and at the time hereinabove agreed upon, then and in such event the defendant may, without prior notice, present to the above entitled court a copy of said medical report of said two physicians, acknowledged by them before a Notary Public, and upon the presentation of said acknowledged copy of said report, the said court shall then and thereupon order the dismissal of the above entitled action, with prejudice."

Attached to the stipulation is a statement signed by said Joan Berry which recites: That she is represented by counsel of her own choosing and is acting under their advice; that she has read the stipulation and agrees to all of its provisions and in consideration thereof agrees to release defendant of all claims that she now has or may hereafter have against him except as set forth in said stipulation; that she agrees that she will make herself and the child available and will, at all reasonable times, cooperate and agree to have any and all physical and medical examinations made of her and of the child that may be required by defendant's attorneys for the purpose of making the tests provided for in said stipulation; that she further agrees that in the event the physicians' report shall show that defendant is not the father of her child she will accept said report as establishing that fact and will not, personally or on behalf of the child, make any further claims against defendant for the support, maintenance, care and education of the child or of herself.

Said stipulation and the attached agreement of Joan Berry

were presented to said Judge William S. Baird, who, without a hearing, without the taking of any evidence, and without making inquiry or a finding as to whether the stipulation or the order was for the best interests of plaintiff child, signed an order reading as follows: "Upon reading the foregoing stipulation and statement and agreement of Joan Berry, it is ordered that said stipulation be and the same is hereby approved and the parties are ordered to perform the terms thereof as set forth therein." The stipulation, agreement, and order were filed on June 10, 1943.

The guardian *ad litem* and her attorneys were without power to enter into and the court was without power to approve the stipulation. Section 196a of the Civil Code provides that a civil suit in behalf of a minor illegitimate child to enforce the obligation of a parent to support it may be maintained by a guardian *ad litem* and in such action the court has power to order and enforce the performance of such obligation. The power of a guardian *ad litem* in such an action is not unlimited. In effect the court is the guardian, and the person named as guardian *ad litem* is an officer of the court appointing him and is the agent of the court. "He is like an agent with limited powers." (*Cole* v. *Superior Court,* 63 Cal. 86, 89 [49 Am.Rep. 78].) A minor, who must of necessity appear by his guardian, is not bound by the admissions of the guardian which mean the sacrifice or giving away of the ward's property. (*Kidwell* v. *Ketler,* 146 Cal. 12, 18 [79 P. 514]. See, also, *Waterman* v. *Lawrence,* 19 Cal. 210, 217 [79 Am.Dec. 212].) The relationship between a guardian *ad litem* or the attorney whom he employs and the minor is not the same as that between an attorney and an adult client. It is the duty of the guardian and the attorney to protect the rights of the minor, and it is the duty of the court to see that such rights are protected. The court may set aside or disregard concessions of the guardian which have not already been judicially approved and which are shown to the court to have been improvidently made. Any acts or concessions that apparently waive or surrender any material right of the minor, such as *the right to a trial,* should be set aside unless they be shown to be beneficial or, in any event, not prejudicial to the rights and interests of the minor. (*Eidam* v. *Finnegan,* 48 Minn. 53 [50 N.W. 933, 934, 16 L.R.A. 507].) The appointment of a guardian *ad litem* is not a bare technicality and the

office of guardian involves more than perfunctory or shadowy duties. It is the duty of a guardian *ad litem* to protect or defend a suit, as the case may be. The guardian *ad litem* can neither admit anything against nor waive anything in favor of his ward, but the adversary of the infant must be required to prove his whole case. (*Greene* v. *Mabey*, 35 R.I. 11 [85 A. 118, 120]; *Spotts* v. *Spotts*, 331 Mo. 917 [55 S.W.2d 977, 983, 87 A.L.R. 660].)

In the instant case, before the issues were joined between plaintiff and defendant by the filing of the latter's answer, the stipulation was entered into and presented to Judge Baird for his approval. No evidence was introduced from which the court could determine whether the terms of the stipulation were fair and reasonable or whether the interests of the minor were protected. The instrument provided that judgment should go against the minor by way of dismissal of the action in the event that two of the physicians made a report, which was not required by the stipulation to be verified, favorable to defendant. Without knowledge of the facts the court could not exercise supervision over the rights of the minor or the acts of the guardian *ad litem*. The order recited that ''upon reading the foregoing stipulation'' the same was approved and the parties were ordered to perform its terms. This was an approval of what had been done by the guardian and the attorneys not because the judge who signed the order found that it was for the best interests of the minor but solely because the consent of the guardian and her attorneys had been given and they were satisfied.

Neither the guardian *ad litem* nor the attorneys for the minor, nor both, had power to consent to a judgment depriving the minor of its right to claim support from defendant without the opportunity of a trial at which all available evidence could be introduced for consideration by the jury, not merely such evidence as the parties considered proper for the determination of the issue involved.

A stipulation that only such evidence as shall be agreed upon by the parties shall be admissible will not be allowed to control the action of the court in the reception of other evidence or to determine the effect to be given to it. Courts will not permit the course of justice to be controlled or the conduct of an action to be circumscribed in such manner as to defeat the ends of justice. Parties cannot arrogate judicial functions to themselves nor can they agree to oust the court of the juris-

diction given to it by law to admit all evidence applicable to a cause and to render judgment accordingly. (*McCormick* v. *Woodmen of the World,* 57 Cal.App. 568, 571 [207 P. 943].) Neither can a court be deprived of its jurisdiction to admit competent circumstantial evidence by an agreement of the parties requiring direct and positive proof of a fact. (*Utter* v. *Travelers' Ins. Co.,* 65 Mich. 545 [32 N.W. 812, 816, 8 A.L.R. 913].) In *Fidelity & Deposit Co.* v. *Davis,* 129 Kan. 790 [284 P. 430, 434, 68 A.L.R. 321], the court said that the experience of seven centuries has proved that the rules of evidence promote the general welfare and are for the best interests of the people, and that an agreement as to what shall constitute conclusive evidence is an attempt to make the court a ministerial officer of the parties to do that which the parties agree shall be done. In *Conwell* v. *Varain,* 20 Cal.App. 521 [130 P. 23], a stipulation was made in open court that the cause be submitted upon the single question of fact whether one line written in ink in a document was above or beneath another line, and that judgment should be rendered for plaintiff or for defendant accordingly as a handwriting expert appointed by the court should report concerning which line was superimposed upon the other. The court held (p. 528) that while an attorney had authority to stipulate upon certain matters, a stipulation that the cause be submitted upon the unsworn report of an expert and that such report should be conclusive was not to be tolerated.

An examination of the cases cited by defendant will readily show that they are not applicable to the case at bar although statements may be found therein *arguendo* that seem to favor his theory. In the case of *In re Price,* 61 Cal.App. 592 [215 P. 710], the mother of the minor and not the guardian *ad litem* had employed attorneys and the question was whether they were entitled to be paid for their services. No stipulation was involved and the only question decided by the court was that when a guardian *ad litem* has been appointed no one else may exercise his powers. In *Newport* v. *Hatton,* 195 Cal. 132 [231 P. 987], both sides of an action in which minors were defendants were controlled by the same attorney, and by fraudulent concealment of the rights of the minors the facts were not truly presented to the court. In *Estate of Hastings,* 206 Cal. 524 [274 P. 973], the court appointed an expert witness in a proceeding by a claimant of the estate of a deceased person. The

court held that the attorney for the incompetent claimant not having made an objection to the appointment of the expert all objections to such action were waived. However, there was no stipulation that his evidence should be binding or that it should be given any greater weight than such evidence is usually accorded. In *Taylor* v. *Hill,* 115 Cal. 143 [44 P. 336, 46 P. 922], the only point was whether an attorney employed by the guardian *ad litem* had power to waive a statutory notice of a claim.

The effect of the stipulation in question here was to rest the final judgment and the determination of the rights of the unborn infant solely upon the unverified report of two physicians. This was an attempt to deprive the court of the power to receive any evidence concerning the paternity of the child other than the report of the physicians, and to make conclusive that which has not been declared by the Legislature to be conclusive (see Code Civ. Proc., §§ 1837, 1978), and which the Supreme Court of this state has expressly declared is not conclusive. (*Arais* v. *Kalensnikoff,* 10 Cal.2d 428, 432 [74 P.2d 1043, 115 A.L.R. 163].)

The stipulation was not a compromise of the minor's claim, and if intended as such the annexed order purporting to approve it was invalid and failed of its purpose. Section 1431 of the Probate Code provides that when a minor has a disputed claim for damages, money, or other property against a third person the same may be compromised, but that before the compromise is valid it must be approved by the superior court of the county wherein the minor resides upon the filing of a verified petition in writing. The record does not show and defendant does not claim that a verified petition was filed, and, as heretofore pointed out, no hearing was had and no evidence taken.

Since the stipulation and the purported order approving it are of no effect there was no necessity that an application be made on behalf of the minor for relief therefrom. In connection with his argument that the stipulation and the accompanying order purporting to approve it constituted a consent to a dismissal of the action upon the happening of the events provided for in the stipulation, defendant cites *Pacific Paving Co.* v. *Vizelich,* 2 Cal.App. 515 [83 P. 459]; *Moffitt* v. *Jordan,* 127 Cal. 628 [60 P. 175]; *Brown* v. *Superior Court,* 10 Cal. App. 2d 365 [52 P.2d 256], and *Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522]. The rights of a minor were not involved

in any of said cases and whatever may be found in the opinions in reference to applications for relief from stipulations is inapplicable to the instant case for the reasons hereinbefore stated.

It follows that Judge Mosk's order denying defendant's motion to dismiss and Judge Kincaid's order denying his plea in bar were properly made.

2. *Did plaintiff make out a prima facie case against defendant?* "Prima facie evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence." (Code Civ. Proc., § 1833.) "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason." (Code Civ. Proc., § 1844.) A witness is presumed to speak the truth. (Code Civ. Proc., § 1847.) Whether Miss Berry was entitled to full credit was for the jury and the trial judge to determine. (*Estate of Gird,* 157 Cal. 534, 542 [108 P. 499, 137 Am.St.Rep. 131]; *Estate of Snowball,* 157 Cal. 301, 305 [107 P. 598].) She testified that she and defendant had four acts of sexual intercourse at or about the date when, in the ordinary course of nature, the child must have been begotten. These acts occurred on the 10th, 23d, 24th and 30th days of December, 1942. This evidence alone was sufficient not only to constitute a prima facie case but to sustain the verdict although denied by defendant. (*State* v. *Reese,* 43 Utah 447 [135 P. 270, 273].) Her testimony was corroborated by defendant's butler as to the fact that she arrived at defendant's home on the evening of December 23d and remained there until some time in the afternoon of December 24th, occupying either defendant's room or a room connected therewith by a bathroom, and that defendant was present in the room during at least a portion of the night of the 23d and in the morning of the 24th. The testimony of the butler that in a conversation had by him with Miss Berry in the spring of 1943 she stated that she was married to a captain in the army and was going to have a baby did not detract from the prima facie case made out by other evidence. It does not appear that she stated when she had become the wife of the captain, and even if it were true that she had married after December, 1942, and even though her evidence were contradicted by other evidence, a prima facie case still remained. Defendant's admission that he had had illicit relations with Miss Berry prior to March, 1942, is not contradictory of her testimony

but in fact tends to corroborate her evidence and to show the probability of his having had sexual intercourse with her in December, 1942. (*State* v. *Reese*, 43 Utah 447 [135 P. 270, 278].)

Section 1833 of the Code of Civil Procedure does not say that prima facie evidence is that which suffices ''until contradicted *or* overcome'' but. ''until contradicted *and* overcome'' by other evidence. When prima facie evidence of a fact has been introduced its effect is not destroyed by the introduction of contradictory evidence. It stands as proof until both contradicted *and* overcome by other evidence. (*Miller & Lux Inc.* v. *Secara*, 193 Cal. 755, 770 [227 P. 171].)

There was evidence that Miss Berry was in Tulsa, Oklahoma, in November, 1942, and in January and April, 1943. While there she was in the company of a man other than defendant whom she had met in May, 1942. Both she and the man in question testified that on two occasions he called at her hotel, took her to dinner and to a theater, and accompanied her back to the hotel. There is no evidence or intimation of improper relations on those occasions. She borrowed money from the man in Tulsa but he testified that the money was loaned through the medium of his attorney and that the attorney obtained a chattel mortgage on Miss Berry's personal property covering the amount of the loan. There was also evidence that on several occasions in Los Angeles she was in the company of another man and twice was in his apartment. The briefs do not point us to anything in the record to indicate whether or not any other persons were present in the apartment while she was there. But even though complete or satisfactory proof had been made of sexual acts by Miss Berry with any other man on other occasions, it would still have been the exclusive function of the jury to determine whether defendant is the father of her child by virtue of his act in December, 1942.

▮ The burden of proof did not rest on defendant to prove that he was not the father of the child. Nevertheless, in his attempt to show that Miss Berry had had illicit relations with other men it was incumbent upon him to show that such relations were had at or about the time when, in the ordinary course of nature, the child must have been conceived (*Estate of Gird*, 157 Cal. 534, 547 [108 P. 499, 137 Am.St.Rep. 131]; *Kyne* v. *Kyne*, 38 Cal.App.2d 122, 131 [100 P.2d 806]), and that at such time there existed both the desire and the opportunity on the part of Miss Berry and a man other than defen-

dant to have improper relations. (*Mensing* v. *Croter*, 209 Cal. 318, 320 [280 P. 1026, 287 P. 336].)

The case of *Sonnenberg* v. *State*, 124 Wis. 124 [102 N.W. 233], cited by defendant, does not lend aid to his assertion that a prima facie case was not established. That was a criminal case in which the fact that the defendant was the father of the child was required to be proved beyond a reasonable doubt, and the question of the establishment of a prima facie case did not enter into the decision.

3. *Was the testimony of Miss Berry so unsatisfactory and incredible as to amount to no substantial evidence?* This question is discussed in twenty-three pages of defendant's brief wherein attention is drawn to discrepancies between the testimony given by Miss Berry in her deposition and that given by her at the trial and contradictions of some portions of her testimony by other witnesses are pointed out. The credibility of Miss Berry, like that of all other witnesses, was a matter for the jury to decide. Having heard all of the testimony, including extensive cross-examination of each witness by opposing counsel, the jury made its determination and the verdict will not be disturbed. (*Treadwell* v. *Nickel*, 194 Cal. 243, 252 [228 P. 25].)

With reference to one of the alleged acts of sexual intercourse defendant asserts that Miss Berry's evidence was so improbable and incredible that none of her testimony can be believed. It may be said that the facts related by her concerning that occasion are not such as might be expected, but people do unusual things in unusual circumstances. The performances of desirous and adventurous persons cannot always be rationalized. Quaint though the episode may appear, the jury, presumably composed of experienced persons, must have believed her statements, and merely because the incident as described may have been unique and extraordinary an appellate court will not say that her testimony is incredible. Notwithstanding defendant's critique the jury believed Miss Berry's evidence.

When a verdict is attacked as being unsupported by the evidence the power of the appellate court is limited to a determination whether there is any *substantial* evidence, contradicted or uncontradicted, that will support the conclusion of the jury. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Estate of Snowball*, 157 Cal. 301, 305 [107 P. 598].)

4. *Were the blood tests conclusive that defendant is not the father of plaintiff?* The qualifications, competency, and integrity of the physicians designated to make the blood tests are not questioned. After the tests were completed they made a report reading as follows:

"Examination of the bloods of Charles Chaplin, Joan Berry and Carol Ann Berry give the following results.

|  | Group | Type |
|---|---|---|
| Charles Chaplin | O | MN |
| Joan Berry | A | N |
| Carol Ann Berry | B | N |

Conclusion reached as the result of these blood grouping tests is that in accordance with the well accepted laws of heredity, the man, Charles Chaplin, cannot be the father of the child, Carol Ann Berry. The law of heredity which applies here is 'The agglutinogens A and B cannot appear in the blood of a child unless present in the blood of one or both parents.' "

Two of the physicians testified at the trial that the report truly represented their findings from the tests made. They and one other physician testified that by reason of said tests defendant was not and could not have been the father of plaintiff. The report and the evidence of the physicians were not controverted by any scientific evidence, but were before the jury to be considered with all of the other evidence in the case. According to the evidence, the so-called A and B test was discovered about 1900 and the M and N test about 1930. It may be argued that because defendant's blood was type MN and the bloods of both Miss Berry and plaintiff were. type N, defendant might have been the father of plaintiff. One physician testified, "We could not have excluded him on such an incomplete test," and another, "We could not rule him out." But it appears from the evidence that the M and N test was an incomplete test and study of the bloods of the respective parties, and that the A and B test was necessary to an authentic and complete report. But the blood tests were not conclusive evidence. It was so declared in the only reported case in California in which blood tests were used for the purpose of attempting to determine the parentage of a child. (*Arais* v. *Kalensnikoff,* 10 Cal.2d 428 [74 P.2d 1043, 115 A.L.R. 163].) In that case the court held (pp. 431, 432) that the evidence concerning the blood test "is expert opinion because the conclusions reached by the ex-

aminer are based upon medical research and involve questions of chemistry and biology with which a layman is entirely unfamiliar," but that such tests and the evidence thereof are not conclusive because not so declared by the code (Code Civ. Proc., § 1978]; and further, that expert testimony is to be given the weight to which it appears to be justly entitled.

Conceding the immutability of the scientific law of blood-grouping, which we have no reason to question, the infallibility of the results of blood tests depends upon the skill employed in making them. Errors are reported due to (1) the lack of training of the serologist; (2) the use of commercial sera; (3) the failure to make a countertest. (16 So. Cal. L. Rev. 190.)

When scientific testimony and evidence as to facts conflict the jury or the trial court must determine the relative weight of the evidence. (*Rolland* v. *Porterfield*, 183 Cal. 466, 469 [191 P. 913]; *Estate of Blake*, 136 Cal. 306, 309 [68 P. 827, 89 Am.St.Rep. 135].) The law makes no distinction between expert evidence and that of any other character. (*Treadwell* v. *Nickel*, 194 Cal. 243, 252 [228 P. 25]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 195 Cal. 174, 184 [231 P. 996].)

The decision in the Arais case has been the subject of discussion and criticism in law reviews and other legal periodicals* but not by other courts as far as we have been able to ascertain, and it remains the law of this state until modified or overruled by the court that rendered the opinion.

█ 5. *Did the court err in requiring defendant to stand in front of the jury with Miss Berry and plaintiff?* Defendant complains of the order of the court directing him to stand in front of the jury in close proximity to the mother holding her child in her arms in order that the jurors might study and compare the physical features of the infant plaintiff with those of defendant. We see no reason why they should not have been given the benefit of personal observa-

*"*Conclusiveness of Blood-Grouping Tests in Proof of Non-Parentage*," 26 Cal.L.Rev. (1937-38) 456; "*Scientific Gadgets in the Law of Evidence—Blood Tests*," 53 Harv.L.Rev. (1939-40) 285, 288; "*Blood Tests as Proof of Paternity*," 8 Kansas Bar Assn. Journal (1939-40) 479, 481. "*Admissibility of Blood Tests in Paternity Cases*," 11 So.Cal.Rev. (June, 1938) 524; a symposium consisting of three articles on the subject of Blood-Grouping, 16 So.Cal.L.Rev. (March, 1943) pp. 161, 177, 193. The Arais case is referred to in a note on pp. 166, 167.

tion of the parties and we have not been referred to any authority to the effect that such an order of the court is improper or prejudicial. On the other hand, such a comparison has been expressly approved. (*People* v. *Richardson,* 161 Cal. 552, 561 [120 P. 20] ; *Mathews* v. *Hornbeck,* 80 Cal.App. 704, 708 [252 P. 667] ; *In re Jessup,* 81 Cal. 408, 418 [21 P. 976, 22 P. 742, 1028, 6 L.R.A. 594].) In the latter case a photograph showing the decedent and the claimant to the estate in the same picture, was introduced for the purpose of comparison. It does not appear in either of the other two cases whether the child and its alleged father were required to stand side by side in front of the jury, but it does not seem that such a presentation would create any greater emotional appeal to the members of the jury than if the child and the reputed father had not been placed so close to each other. The jurors were entitled to the ocular demonstration ordered by the court, and it will be assumed that they exercised their powers of observation rather than of imagination.

We are not impressed with the thought advanced by counsel for defendant that the sympathy of the jurors could have been aroused by the juxtaposition of the three parties in interest. The apprehension expressed by counsel that plaintiff in the arms of her mother caused compassionate visualization of the ancient masterpieces of "Madonna and Child" is dispelled by the character of the evidence in the case which kept the minds of the jurors fixed on the unspiritual and terrestrial affairs of the mother and defendant.

6. *Did the court err in instructing the jury?* Defendant complains of the following instruction: "Whatever claims the medical profession may make for blood tests to determine parentage, no evidence is by law made conclusive or unanswerable unless so declared by the Code of Civil Procedure of the State of California, and the said Code of Civil Procedure of this state does not declare that this type of expert testimony is conclusive or unanswerable, therefore, you are not bound by such medical opinions." The instruction correctly states the law as declared in *Arais* v. *Kalensnikoff, supra.* Other instructions were given upon the subject of expert testimony but it is not claimed that there is conflict among them. The instruction complained of contains no emphasis upon or detraction from evidence of any character introduced at the trial.

7. *Defendant's appeal from the award of $75 per week to*

*plaintiff.* Defendant has not questioned the reasonableness of the award of $75 per week, if he be required to pay any amount at all, but by reason of his contention that he is not plaintiff's father he has appealed from said part of the judgment. Further reference to said appeal is unnecessary by reason of our decision this day rendered on plaintiff's appeal (*post,* p. 669 [169 P.2d 453]) that the amount is reasonable.

The portions of the judgment appealed from by defendant are affirmed.

Moore, P. J., concurred.

McCOMB, J.—I concur in the judgment because of the fact that this court is bound by the decision of the Supreme Court in *Arais* v. *Kalensnikoff,* 10 Cal.2d 428* [74 P.2d 1043, 115 A.L.R. 163]. I believe, however, that that court was in error in its determination of the case. (See *Arais* v. *Kalensnikoff,* [Cal.App.] 67 P.2d 1059.) This view is concurred in, as pointed out in the opinion of Mr. Justice Wilson, by writers in a number of the leading law journals in the United States. Sidney B. Schatkin in a recent work, *Disputed Paternity Proceedings,* (1944) at page 135, thus referred to the Supreme Court's opinion in *Arais* v. *Kalensnikoff, supra*:

"It remained, however, for the Supreme Court, highest judicial tribunal in the State, to render a decision that has evoked the most bitter and critical comment. It has been called 'a striking miscarriage of justice.' The facts in that case have been described as 'standing in a niche all of their own in the judicial hall of fame.' "

It is possible that in view of the advances made in the medical profession since the decision by the Supreme Court in the Arais case, the present court may see fit to review the rule announced in the previous decision and establish a rule of jurisprudence on this subject consonant with the principle uniformly recognized without question by the medical profession of the United States and Europe.

---

*In the cited case the evidence upon which defendant was adjudged to be the father of the child in question, although excluded by the blood test, showed that:

(1) Defendant was twice married;

(2) The mother had named a man other than defendant as the father in the child's birth certificate; and

(3) Defendant was seventy years of age, and, according to his wife, had been impotent for a number of years.

In discussing blood-groupings analogous to those disclosed by the evidence in the instant case Professor Wigmore, commenting upon the subject in his monumental work on Evidence, volume 1, third edition (1940), section 165b, page 615, says:

"But at this point comes into play the great discovery of science (emerging after many years of patient research by numerous scientists, but now accepted as correct by all) viz. that *no particular gene A, B, or O, will appear in the progeny unless it was present in one of the parents.* This universal negative truth of heredity is the basis of the inferences to be examined later."

Ascertainment of the factual truth in the adjudication of any controversy is a consummation devoutly to be wished. Time was when the courts could rely only upon human testimony. But modern science brought new aids. The microscope, electricity, X-ray, psychology, psychiatry, chemistry and many other scientific means and instrumentalities have revised the judicial guessing game of the past into an institution approaching accuracy in portraying the truth as to the actual fact where, in the pursuit of which, scientific devices may be applied. The chemical tests for learning the presence of poisons in the blood stream, application of the Roentgen ray in defining the fracture of a bone, the use of the microscope in acquiring exact knowledge of the authorship of documents, of the presence of bacteria or of the prevalence of white corpuscles,—all argue eloquently for a reliance upon scientific devices for ascertaining the truth. If the courts do not utilize these unimpeachable methods for acquiring accurate knowledge of pertinent facts they will neglect the employment of available, potent agencies which serve to avoid miscarriages of justice.

In the case at bar a widely accepted scientific method of determining parentage was applied. Its results were definite. To reject the new and certain for the old and uncertain does not tend to promote improvement in the administration of justice.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1946. Traynor, J., and Schauer, J., voted for a hearing.