[Civ. No. 21957. Second Dist., Div. Three. Sept. 13, 1957.]

VIRGINIA LEE FELTS, as Guardian, etc., Respondent, v. SEAN M. BETTS, Appellant.

Morris Lavine for Appellant.

H. Burdette Fredricks for Respondent.

WOOD (Parker), J.—Action by a minor, by his guardian ad litem, for a judgment declaring that defendant is the father of the minor, and compelling defendant to pay for the support of the minor. In a nonjury trial, judgment was in favor of plaintiff. Defendant appeals from the judgment and from the order denying his motion for a new trial.

Appellant contends that the evidence is insufficient to support the judgment; and that misconduct of the attorney for plaintiff prevented a fair trial.

Mrs. Virginia Lee Felts is the mother and guardian ad litem of the minor plaintiff. About December, 1949, Mrs. Felts and the defendant Dr. Sean M. Betts became acquainted

at a hospital in Long Beach where they were employed. Mrs. Felts was a receptionist at the hospital and Dr. Betts was the house doctor there. Mrs. Felts was married at the time she and Dr. Betts became acquainted. In May, 1950, her husband obtained a decree of divorce in Illinois.

Mrs. Felts testified, in part, as follows: About September, 1950, she engaged in acts of sexual intercourse with defendant, and thereafter she had such intercourse with him approximately three or four times a week until the latter part of December, 1953. Those acts occurred at her apartment or at his apartment, and sometimes they stayed overnight together at her apartment or his apartment. About 1951, after he returned from a trip to Ireland, he stayed with her in her apartment for a week and during that week they had sexual relations. They had sexual relations on December 2, 6, 9, 13, 16, and 23, 1953. On December 28, 1953, she had a menstrual period, but she did not have such a period in January, 1954. In the early part of February, 1954, she learned that she was pregnant. At that time, she told defendant that Dr. Hewitt said that she was pregnant, and she asked defendant what they should do. He replied that they could get married. A few days thereafter defendant said that he had changed his mind and did not want to get married. On February 28, 1954, defendant became angry and said: "We are through. I will take care of the baby. I will pay the child's support, but that is all until he is 21." Then defendant left and that was the last time she saw him.

Mrs. Felts testified further that the baby (plaintiff) was born September 4, 1954; he weighed seven and three-fourths pounds at the time of his birth; he is normal and living; defendant is the only one with whom she had sexual intercourse from September, 1950, to January, 1954; she had not remarried; she was 37 years of age at the time of the trial.

Mrs. Gerchock, called as a witness by plaintiff, testified that she was a lessee of an apartment house where Mrs. Felts resided; on a number of occasions during the last five months of 1953, between 6:30 a. m. and 7 a. m., she saw defendant's automobile parked near the apartment house; on those occasions she saw Mrs. Felts leave the automobile; and on two occasions she saw defendant leave Mrs. Felt's apartment early in the morning.

Mr. Goen, called as a witness by plaintiff, testified that on March 8, 1954, he served some papers on defendant; he (witness) read one of the papers to defendant; then defendant

said: "She can't prove these dates." (The paper referred to was the affidavit regarding support and custody of the child.)

It was stipulated that over a period of time beginning about September, 1950, and continuing to December 22, 1953, defendant went out socially with Mrs. Felts; they went to the beach, motion picture shows, dances, and to other recreational and social places; during that time he kept company with her about two or three times a week.

Dr. Betts, a witness under section 2055 of the Code of Civil Procedure, testified as follows: He is a doctor of medicine and is 33 years of age. In 1948 he came to California from Ireland. In 1951 he returned to Ireland and remained there about three months. He did not stay in Mrs. Felt's apartment the first week after he returned to California. The first three or four days after he returned to California he stayed with Mr. Condon in Los Angeles. On a number of occasions he had been at Mrs. Felts' apartment, but he never stayed all night there. On a number of occasions she had been at his apartment, but she had never stayed all night there. He saw Mrs. Felts on four or five occasions in December, 1953. On December 22, 1953, they went to a dance. About 11 p. m., they left the dance and went to her apartment where he stayed a short time. A few days before February 8, 1954, Mrs. Felts told him that she was pregnant. He suggested that she have a test made as to whether she was pregnant. On February 8, 1954, Mrs. Felts told him that she had had the test and it was positive. She said that a friend knew a doctor who would perform an abortion. Defendant advised Mrs. Felts against having an abortion performed. Thereafter he saw her twice—about February 15 and February 21, 1954. She did not accuse him of being the father of the baby until the last time he saw her. At that time he said: "How could it be mine? I never had anything to do with you."

Dr. Betts testified further that he never offered to marry Mrs. Felts; he did not stop his car near the apartment of Mrs. Felts in 1953, between 6:30 a. m. and 7:30 a. m., "and let the plaintiff out of" his car; he did not say to Mr. Goen (the process server) that, "She can't prove those dates"; he (witness) told the process server that this "is just blackmail."

Dr. Hewitt, a physician, called as a witness by plaintiff, testified that she is an obstetrician; she examined Mrs. Felts on February 11, 1954, and at that time Dr. Hewitt was of the opinion that Mrs. Felts would give birth to a child on October

5, 1954; she (witness) examined Mrs. Felts again on May 7, 1954, and at that time she (witness) was of the opinion the child would be born in September, 1954; the baby was born September 4, 1954; in the opinion of Dr. Hewitt it was a "full-term" baby and it was conceived between the middle of December, 1953, and the middle of January, 1954—probably closer to the middle of December.

When the defendant was on the witness stand the child was brought to the stand, and the judge viewed the child and defendant.

Pursuant to order of court, and upon request of defendant (and stipulation of the parties), tests were made of the blood of Mrs. Felts, defendant and the child. Reports of two physicians, who made the tests, were received in evidence. The conclusion, stated in each report, was to the effect that the tests (referred to in each report) did not exclude defendant as the putative father.

The court found that defendant is the father of the minor plaintiff.

As above indicated, appellant contends that the evidence is insufficient to support the finding and judgment that he is the father of the minor plaintiff. He argues that there were inconsistencies in the testimony of Mrs. Felts; that her testimony was inherently incredible and was contradicted by the laws of nature and by other evidence.

It is true that there were inconsistencies in the testimony of Mrs. Felts. On direct examination she testified that early in January, 1954, Dr. Hewitt examined her and then she learned that she was pregnant; that in the evening of that day defendant said that they could get married; and that in the latter part of January defendant said he had changed his mind about getting married. On cross-examination or on redirect examination, she testified that the dates referred to in her previous testimony (as to when Dr. Hewitt examined her, when she learned she was pregnant, when defendant said they could get married, and when he said he had changed his mind) were in February, 1954, and were not in January.

In connection with appellant's argument that the testimony of Mrs. Felts was inherently incredible, he refers to her testimony regarding the conduct of defendant and herself prior to September, 1950, and to her testimony regarding a conversation she had with Mr. Delaney after she was pregnant. She testified that on almost every date she and defendant had prior to September, 1950, they returned to her apartment,

and defendant stayed all night there; and on those occasions they occupied the same bed but did not have sexual relations. She also testified that when she told Delaney that she was pregnant and defendant had refused to marry her, Delaney offered to marry her; she had not had sexual relations with Delaney.

In connection with appellant's argument that the testimony of Mrs. Felts was contradicted by the laws of nature, appellant states that Mrs. Felts testified that the last time defendant had sexual intercourse with her was on December 22, 1953; that it was established by her testimony that she had a menstrual period on December 28; that defendant testified that it was impossible for menstruation to occur after conception. It is to be noted that Dr. Hewitt testified that in many instances a woman thinks that menstruation has occurred when in fact the discharge is not menstruation medically and is not menstruation after pregnancy; this could have happened in this case; it is reasonably common for women to bleed after conception.

The credibility of Mrs. Felts was a matter for the trial judge to decide. (See *Berry* v. *Chaplin,* 74 Cal.App.2d 652, 663 [169 P.2d 442].) The inconsistencies in her testimony, the allegedly incredible statements made by her, and the reasonableness of her testimony were matters to be considered in determining her credibility. In *Berry* v. *Chaplin, supra,* which was an appeal from a judgment that defendant was the father of the minor plaintiff, it was contended that certain testimony of the mother was so incredible that none of her testimony could be believed. In that case it was said at page 663: "[M]erely because the incident as described may have been unique and extraordinary an appellate court will not say that her testimony is incredible." In the present case, the weight and sufficiency of the evidence, the inferences to be drawn therefrom, the credibility of the witnesses and the determination of inconsistencies in their testimony were matters for the determination of the trial judge. (See *Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].) The question as to whether defendant was the father of the child was a question of fact for the determination of the trial judge. When a judgment is attacked "as being unsupported by the evidence the power of the appellate court is limited to a determination whether there is any *substantial* evidence, contradicted or uncontradicted, that will support the conclusion" of the trial judge. (*Berry* v.

*Chaplin, supra,* 663.) In the present case Dr. Hewitt was of the opinion that conception occurred after December 15, 1953, and prior to January 15, 1954, and probably closer to December 15. Mrs. Felts testified that defendant had sexual intercourse with her on December 16 and 23, 1953. The blood tests did not exclude defendant as the putative father. The trial judge viewed the child and defendant while the child and defendant were together at the witness stand. Counsel for defendant states in his brief (p. 35) that defendant's "testimony was very direct and positive in denying the paternity." Immediately following that assertion counsel for defendant sets forth excerpts from the reporter's transcript. The substance of those excerpts is that defendant testified that "for the first week" after he returned from Ireland he did not share the apartment of Mrs. Felts; he had never stayed all night at her apartment; she had never stayed all night at his apartment; and it was impossible for menstruation to occur after conception. He did not testify that he had not had sexual intercourse with Mrs. Felts. He testified that when she accused him of being the father of the child, he replied: "How could it be mine? I never had anything to do with you." The evidence was sufficient to support the finding and judgment that defendant is the father of the minor plaintiff.

Appellant contends that the statements made by plaintiff's attorney, at a conference in the trial judge's chambers, constituted misconduct which prevented a fair trial. The judge, the attorneys, and a newspaper reporter were present at the conference, but a shorthand reporter was not present and the statements made were not reported in shorthand. Mr. Hackler, the attorney for defendant, made an affidavit regarding the conference and he filed the affidavit in support of his motion for a new trial. The affidavit stated, in part, that the judge asked whether counsel had explored the possibility of settling the case; Mr. Hackler replied that there had been no settlement negotiations; Mr. Fredricks, the attorney for plaintiff, stated that prior to the time Mr. Hackler was in the case, the defendant had seriously considered marrying the plaintiff, and that defendant had consulted defendant's brother, who is a priest, as to whether such a marriage would be sanctioned by the church, since Mrs. Felts was a divorcee. They determined that the marriage would not violate the tenets of their faith. The newspaper reporter suggested that the case could be settled by marriage of defendant and Mrs. Felts

in a ceremony performed by the judge; Mr. Hackler then stated that defendant, "as he had testified," had never considered marrying Mrs. Felts; Mr. Fredricks replied that those matters had been considered prior to the time Mr. Hackler was in the case.

Mr. Fredricks filed a counteraffidavit in which he stated that Mr. Hackler said, at the conference, that defendant was opposed to marriage; that, in response to the judge's inquiry as to settlement negotiations, Mr. Hackler stated that defendant's position as to marriage was an adamant one. The affidavit of Mr. Fredricks did not state that the conversation as related in Mr. Hackler's affidavit did not occur.

■ With reference to the alleged misconduct of the attorney for plaintiff, the appellant argues that the statement made (at the conference) by Mr. Fredricks that defendant had seriously considered marrying Mrs. Felts was in direct contradiction of defendant's testimony that he had never offered to marry her and that he had told her that marriage was out of the question. Appellant argues further that such contradictory statements of Mr. Fredricks "probably weighed against" defendant, and since Mr. Fredricks did not testify or present evidence in support of his statement, the statement constituted misconduct. It does not appear that Mr. Hackler objected, at the conference, to the statement of Mr. Fredricks or to the statements of the newspaper reporter or any one. It does not appear that Mr. Hackler made a motion for a mistrial. The statement by Mr. Fredricks or the other statements at the conference did not constitute prejudicial misconduct.

■ Appellant contends further that the court erred in sustaining an objection to a question which appellant asked Dr. Rudolphus Betts (brother of defendant). That witness, who was called by defendant, was asked: "Do you know any other girl that he [defendant] was going with in the fall of 1953?" Plaintiff objected to the question on the ground that it was immaterial. Appellant argues that the question was relevant to the issue whether defendant "did the things claimed" by Mrs. Felts. The question was immaterial.

■ Appellant also contends that the court erred in not granting his motion for a new trial on the ground of newly discovered evidence. Mrs. Felts had testified that she had not seen a lawyer before February 28, 1954, regarding the filing of a lawsuit, and that until February 28 she was under the impression that she and defendant would be married. The

alleged newly discovered evidence was that Mrs. Felts consulted her attorney as early as February 25, 1954, with reference to commencing this action.[1] Appellant argues that in view of such testimony of Mrs. Felts to the effect that she had not seen her lawyer before February 28, the newly discovered evidence that she had consulted him as early as February 25 "destroyed the foundation upon which the whole case for the plaintiff rested." Upon the motion for a new trial the trial judge was not required to find that the evidence was newly discovered or that defendant exercised reasonable diligence to discover and produce the evidence. It cannot be said as a matter of law that there was newly discovered evidence. This contention is not sustainable.

After the present case had been submitted for decision on appeal, appellant filed an application for permission to produce additional evidence; he has requested that, upon the production of such evidence, this court make findings contrary to the findings of the trial court. He requests that this court make an order that additional samples of blood be taken from Mrs. Felts, the minor plaintiff, and defendant, and that the samples be sent to Dr. Alexander S. Weiner in New York for blood tests. Attached to the application is an affidavit of defendant in which he states, in part, that he sent copies of the reports of blood tests (which were received in evidence) to Mr. Schatkin, an author of a standard work on paternity; thereafter he received a letter from Mr. Schatkin which stated that the chances are 20 to 1 that defendant is excluded as a parent of the minor plaintiff. Also attached to the application is a letter from Dr. Weiner to Mr. Schatkin in which Dr. Weiner reports the results of a blood test made

---

[1] In the affidavit of Mr. Hackler, filed in support of defendant's motion for a new trial, he states that: after the trial, defendant informed him that he was under the impression that the original fee allowed for services of plaintiff's counsel covered services beginning in February, 1954, and that some reference to the exact date (on which such services began) had been made by plaintiff's counsel during the hearing before the commissioner (at a hearing on an order to show cause in the matter); that examination of the reporter's transcript of the hearing did not disclose any reference to the date of employment of plaintiff's counsel; that on July 21, 1955, the reporter read to Mr. Hackler the portion of the proceedings which had been omitted from the transcript under the designation "(Argument by Mr. Murphy)"; that the reading disclosed that plaintiff's counsel had stated that his employment on the case began on February 25, 1954. Mr. Hackler states further in his affidavit that such statement of plaintiff's counsel is shown by the transcript of such omitted material attached to his affidavit. Such transcript is not attached to his brief and does not appear in the record on appeal.

by him in another case (not the present case); and also attached to the application are photostatic copies of the results of the test in the other case.

Plaintiff filed an answer to defendant's application, and plaintiff made a motion to strike, from the application, the photostatic copies of the results of the test made by Dr. Weiner in the other case.

The blood tests in the present case were made on February 11, 1955, at the request of defendant (and upon stipulation of the parties). The reports of those tests were to the effect that defendant was not excluded as the putative father. The reports were introduced in evidence without objection. It does not appear that defendant questioned the reports at the trial or on the motion for a new trial. The trial was held in May, 1956. The showing made in support of the application is clearly insufficient to warrant the taking of additional evidence by this court. The application for permission to produce additional evidence was filed in July, 1957. The application is denied.

The purported appeal from the order denying the motion for a new trial is dismissed.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.