In arguing against clarification of Indian benefits and rights, Barbara Jade R.'s (Jade's) attorney and guardian ad litem (counsel) abandoned his role as the minor's advocate. In addition, I believe the findings required by Indian Child Welfare Act (ICWA) (25 U.S.C. § 1912(f)) were too stale to be used as the basis of termination of parental rights.
 1. Counsel should have explored and clarified Jade's Indian rights and benefits before parental rights were terminated.
The Sycuan Band of the Kumeyaay Nation (Tribe) opposes Jade's adoption. It favors guardianship because it believes Jade would lose her tribal identity and because as an enrolled member she has significant tribal benefits. Those benefits include a monthly stipend of $1,500 to be placed in a trust until age 18, an increased monthly stipend after age 18, a free higher education, housing on reservation land, and lifetime medical and dental coverage. At the time of the hearing there were unanswered questions with respect to what benefits Jade may already have, whether she stands to lose benefits if adopted, and whether Jade can in fact get any lost benefits back after the age of 18.
Carol Banegas, the social service worker representing the Southern Indian Health Council, testified she was assigned the case for only three months and *Page 957 
indicated she would still have to check on whether any "windows" of eligibility might close for Jade. She was still waiting for a response from the Tribe on how Jade's trust monies might be affected and whether Jade would lose her membership in the Tribe if she were adopted. She did not check on whether there were back arrearages of trust money due to Jade. In these matters Ms. Banegas acknowledged the importance of directly contacting the tribal chairman to clarify the position of the Tribe but at the time of the hearing she had not done so. She filed no report with respect to any findings related to Jade's relationship to the Tribe. She did not form any conclusions and offered none with respect to what was in Jade's best interests as an Indian child. As the court observed, she did not personally know much and what information she possessed was secondhand.
Adoption social worker Jodi Squires testified Jade's tribal membership "would still be there when she is 18" (italics added), but also that Jade "could possibly
still have those rights" (italics added). For these conclusions she relied on discussions with Ms. Banegas. When asked if her recommendation would change if she found out that Jade's rights and benefits, even if they reached a sum of $200,000, would be terminated, she responded: "No. I think that it's fine." Her reason for supporting such a termination was that the need and benefits of adoption outweigh Jade's Indian interests.
For me, the important question is not whether Jade's rights as an Indian child outweighed her right to the security of adoption. A secure adoptive home is critical. The important question is whether Jade was owed a concurrent duty to explore and where necessary preserve her tribal interests before they might be lost. I believe she was, in the first instance, owed this duty by her counsel.
Under Welfare and Institutions Code[1] section 317, subdivision (c), the primary responsibility of a child's counsel is to advocate for the protection, safety and physical and emotional well-being of the child. However, counsel is expressly charged with an even broader duty. As section 317, subdivision (e), makes clear: "Counsel for the child shall be charged in general with the representation of the child's interests. . . . In addition counsel shall investigate the interests of the child beyond the scope of the juvenile proceeding and report to the court other interests of the child that may need to be protected by the institution of other administrative or judicial proceedings."
Consistent with section 317, subdivision (e), California Rules of Court,[2] rule 1438(g), provides that any interested party may advise the court of *Page 958 
information regarding an interest or right of the child to be protected or pursued in other judicial or administrative forums. If the child's attorney or Court Appointed Special Advocate (CAPTA) guardian ad litem learns of such a right or interest, he or she is required to immediately notify the court and "seek instructions [on how to proceed]." (Rule 1438(g)(2).) "If the court determines that further action on behalf of the child is required to protect or pursue any interests or rights, the court must appoint an attorney for the child if the child is not already represented by counsel, and do one or all of the following: [¶] (A) Refer the matter to the appropriate agency for a further investigation, and require a report to the court within a reasonable time; [¶] (B) Authorize and direct the child's attorney to initiate and pursue the appropriate action; [¶] (C) Appoint a guardian ad litem for the child . . .; or [¶](D) take any other action to protect or pursue the interests and rights of the child." (Rule 1438(g)(3).)
"Nothing in the rules setting out the CAPTA guardian ad litem
duties makes [the] duty to evaluate the child's circumstances exclusive or precludes others from evaluating those circumstances; rather, the guardian ad litem is only one among many invested with the duty to protect the child's best interests." (In re Josiah Z (2005) 36 Cal.4th 664, 683
[31 Cal.Rptr.3d 472, 115 P.3d 1133], citing Berry v.Chaplin (1946) 74 Cal.App.2d 652, 657 [169 P.2d 442] ["It is the duty of the guardian and the attorney to protect the rights of the minor, and it is the duty of the court to see that such rights are protected"].)
Counsel was aware at the time of the hearing that tribal rights and benefits existed for Jade but argued they were irrelevant to the proceedings. He argued that if tribal benefits were examined by the court, it would also have to hear evidence concerning the prospective adoptive family's financial ability. He expressly and repeatedly stated he considered the issue of Jade's benefits to be purely speculative and of no importance, and in fact he objected to virtually every attempt by mother's attorney to clarify what Jade's interests might be or what loss might occur if adoption were to be recommended and parental rights terminated. When the court suggested it was willing to accept a stipulation as to what benefits and rights existed, counsel refused.
Like Ms. Squires, counsel's error was in assuming Jade's interest in being adopted is inconsistent with and thus irrelevant to her tribal rights and benefits. They are not. In selecting one responsibility over the other, he placed himself in a position adverse to Jade.
Counsel's adverse position operated at two levels. First, his duty to advocate in the best interests of his client cannot in my opinion be accomplished if he does not completely know and incorporate into his opinion all of *Page 959 
the factors important to making decisions in the minor's best interest. I believe the record should clearly reflect counsel for a minor has done so, especially where as here there are demonstrable benefits at risk. At a second level, as the majority itself notes, every tribe has a right to define its own membership. (See Santa Clara Pueblo v. Martinez (1978)436 U.S. 49, 72, fn. 32 [56 L.Ed.2d 106, 98 S.Ct. 1670].) We do not know if in fact the Tribe has rules, regulations and membership ordinances that would allow preservation of Jade's rights if they are timely and correctly filed with the Tribe before adoption. If the formal termination of parental rights alters any of Jade's rights, this should have been clarified and, if possible, actions should have been taken to protect those rights before the termination order was made. Counsel could have independently contacted the Tribe on Jade's behalf, sought a tribal resolution if necessary concerning her continued membership and rights, and if they were available he could have taken other appropriate action in a tribal forum to protect her. (See rule 1438 (g)(3)(C); San Diego County Dept. of SocialServices v. Superior Court (2005)134 Cal.App.4th 761, 768 [36 Cal.Rptr.3d 294].)
The majority is content to infer that Jade's counsel properly performed his official duty under section 317, subdivision (e), to investigate other interests of the child beyond the scope of the juvenile proceeding. There is nothing in the record, however, either at the hearing or at any other time, from which such an inference can be drawn. If there was notice — and there was — that Jade's rights and benefits might have been limited or eliminated by an order for adoption, for Jade's sake it was incumbent on counsel to place his efforts and findings on the record for the court before the order was made. He did not do so.
Rule 1438(g)(2) requires that once the court was apprised of the express tribal objection to adoption and loss of the substantial benefits to which Jade is apparently entitled, it should have either made a finding that there were no rights to be protected or, finding there were such rights, required her counsel fully investigate what those interests are and how further contacts with the Tribe prior to termination might preserve them even if Jade were to be adopted. Rather, he too concluded the matter was irrelevant. In the face of counsel's clear unwillingness to pursue Jade's interests and report back to it, the court could have considered appointing someone else to investigate the protection of those interests. (See In re Celine R.
(2003) 31 Cal.4th 45, 60-62 [1 Cal.Rptr.3d 432, 71 P.3d 787].) It did not fulfill the requirements imposed by rule 1438(g)(2).
While not directly related to the question of responsibilities Jade's counsel owed to her, I would note that requiring counsel and die court resolve an Indian child's rights may be important to a family interested in adoption. Here the prospective adoptive parents have not been told what benefits Jade *Page 960 
might be entitled to. They are not blood relatives of Jade and are not descendants of any Indian tribe. They want to adopt her irrespective of her tribal rights. In other cases, however, especially where a family is intent on preserving a child's Indian heritage, the family members might consider a child's tribal rights of immense importance both financially and culturally. If they learn during the hearing process that tribal rights might be lost if adoption is recommended, they could theoretically request guardianship in lieu of adoption precisely in order to maintain the substantial rights of the minor. The ramifications of this option cannot be explained to families unless it is fully explored by counsel and the court.
Finally, requiring resolution of an Indian child's tribal rights at or prior to the permanency planning and placement hearing assures the Tribe will be adequately represented. Here, the Tribe was mistaken if it believed its position opposing adoption or that Jade's rights as an Indian child were being protected at the selection and permanency planning hearing. Nobody advocated on the Tribe's behalf. Nobody advocated Jade's tribal interests. My concern about tribal absence arises not only from the lack of witnesses available to respond to matters concerning tribal interests, it arises from testimony of witnesses like Ms. Squires, who in attempting to explain the very recent change in recommendation from guardianship to adoption, stated: "And if we fight the tribe, they will be able to appear in court or come to represent themselves." Of course if the Tribe has no genuine interest in representing itself or the child's tribal interests, it would be advantageous to have that position appear clearly on the record.
 2. Because of the staleness of the information relevant to required ICWA findings, the referee should have permitted evidence of and made findings with respect to whether the continued custody of Jade would result in serious emotional or physical damage.
Mother contends here as she did below that the referee was required to make a finding beyond a reasonable doubt that her continued custody of Jade would likely result in serious emotional or physical damage to the child. On the facts of this case I believe she is correct.
When the termination of parental rights is sought in a case involving an Indian child, evidence, which includes expert testimony, must establish beyond a reasonable doubt that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(f); rule 1439(m).) There is authority for the proposition that this finding may be made at the hearing at which the selection and implementation hearing is set. Presumably, this is acceptable given the short length of time, a statutory 120 days, that usually exists between that hearing *Page 961 
and the selection and implementation hearing. However, the findings should be made again if the parent presents evidence of changed circumstances or demonstrates that the finding is stale due to the selection and implementation hearing being set substantially longer than the 120-day statutory period. (SeeIn re Matthew Z. (2000) 80 Cal.App.4th 545, 554-555
[95 Cal.Rptr.2d 343]; Seiser and Kumli, Cal. Juvenile Courts Practice and Procedure (2005) Jurisdiction, § 2.32A[5] p. 2-63.)
As mother notes in her brief to this court, and as the majority acknowledges, at the time of the March 7, 2005, permanency planning hearing, any findings and evidence as to the application of ICWA standards were for all practical purposes almost a year old. The declaration of Indian Social Services Representative Lydia Rochfort was even older. It was dated December 11, 2003, and was submitted to the court on December 17, 2003, as part of the status review.
At the conclusion of the proceedings below, the referee announced that the required ICWA findings were to be found in previous orders of the court and based on those minute orders, which he took judicial notice of, he believed ICWA had been complied with. For his part, counsel for Jade stated: "The whole issue of the I.C.W.A. in this particular case had no place."
There is no question that mother sought a ruling from the referee on whether beyond a reasonable doubt her continued custody of Jade met the statutory requirements. Nor is there any doubt that she sought to introduce evidence concerning whether this standard had been met. Unlike my colleagues, I have no confidence that Ms. Banegas, the individual responsible for responding to these issues, discussed mother's psychological or physical condition and how it might relate to Jade, with Ms. Rochfort or anyone else. The only references I find in the record to her contacts with anyone are at best truncated, lacking in substance or deemed irrelevant. For example, the following exchanges took place:
"Q. [Mother's counsel] Did you do any studies yourself what would be the best interest of . . . Jade?
"[Minor's counsel] Objection. Vague.
"THE COURT: Sustained. [¶] . . . [¶]
"Q. [Mother's counsel] Have you done any subsequent assessment?
 "A. [Ms. Bangeas] Yes. *Page 962 
"Q. [Mother's counsel] When?
"A. [Ms. Banegas] I can't give you exact dates, but there have been conversations with the Indian Unit, with the therapist for Southern Indian Health, and also with — I'll just say those two.
"Q. [Mother's counsel] By you or someone else like Ms. Rochfort?
"A. [Ms. Banegas] By myself and others.
"Q. [Mother's counsel] Did you write any reports?
"A. [Ms. Banegas] No.
"Q. [Mother's counsel] Is there any report that you personally prepared or submitted that indicated that the continued custody of . . . Jade by the mother . . . would likely result in serious emotional or physical damage to the child?
"[Jade's counsel] Objection. Relevance.
"[Agency's counsel] Objection. Relevance.
"THE COURT: Sustained.
"Q. [Mother's counsel] Are you aware that Ms. Rochfort wrote a recommendation indicating such to county counsel or to the social welfare agency?
"[Jade's counsel] Objection. It's irrelevant.
"THE COURT: Sustained."
There is nothing in the record of the hearing that leads me to believe the evidentiary and burden of proof requirements of ICWA were complied with or even considered at the permanency planning hearing. Because of die staleness of the information, I believe they should have been. I cannot join my colleagues in inferring these issues were somehow considered when questioning on the most significant issue, that is, whether at the time of the hearing there was a likelihood of serious emotional or physical injury to Jade, was ruled irrelevant. *Page 963 
I would remand this case. Jade's counsel should be directed to clarify her rights and benefits or, if he is unwilling, another representative should be appointed to do so. I would also require termination of mother's parental interests be based upon current information.
Appellant's petition for review by the Supreme Court was denied June 21, 2006, S143100.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] All rule references are to the California Rules of Court unless otherwise specified. *Page 964