[Civ. No. 9083.   Third Dist.   Feb. 14, 1958.]

LAURENCE PAUL DARLINGTON, Appellant, v. BASALT
ROCK COMPANY, INC. (a Corporation), Respondent.

576

Philip Steiner and Robert K. Barber for Appellant.

Bronson, Bronson & McKinnon for Respondent.

PEEK, J.—Plaintiff appeals from a denial of his motion to set aside an order approving the compromise of a minor's claim for damages pursuant to the provisions of Probate Code, section 1431.

At a time when he was a minor of 17 years of age, plaintiff suffered serious injuries as the result of a collision between a car in which he was riding and a truck owned and operated by the defendant Basalt Rock Company and driven by one of its employees. Thereafter Mr. Ghidella of the law firm of King and Ghidella, on behalf of plaintiff's father, filed a petition for approval of the compromise previously agreed to by the father and the defendant's insurance carrier. The petition alleged in part that while plaintiff was riding as a guest in an automobile owned by R. Connors and operated by his daughter, Susan Connors, that vehicle collided with defendant's truck and plaintiff sustained injuries of a permanent nature, i.e., fracture of the right arm requiring amputation thereof, arterial anastomosis, fracture of the right foot and severe shock; that defendant offered to compromise the claim; and that petitioner was advised and considered this sum a fair and just compromise under the circumstances.

At the hearing on the proposed compromise, Mr. Ghidella was asked by the court if the compromise was in the best interest of the minor. In reply he stated that in his opinion it was; that plaintiff did not have a case against the defendant. Mr. Ghidella then requested that the father read the petition. However the court said he would explain it, stating, "If this compromise is approved . . . it is the end . . . You haven't any further rights at all, if you accept it." The father was next asked by the court if he wanted to accept the order of compromise with the understanding that ". . . it is a fair and just compromise to the boy . . . ," and he answered in the affirmative. The court observed that it appeared to be a good settlement. Mr. Ghidella further stated to the court: "Of course the award is an outright bluff. We had no case whatsoever." The court concluded the hearing with the comment: "If the liability is as questionable as Counsel represents, I have no doubt but what it is to your interests if you get anything, isn't it?" And the father replied, "Yes."

The order approving the compromise recited that it appeared to be reasonable and ordered the father to distribute specified portions of the $4,900 received as follows: $1,975 to himself for medical expenses incurred on plaintiff's behalf; $887.75 to King and Ghidella for attorney fees; and the balance, $2,047.25, to be deposited by him as trustee in a bank subject to withdrawal only upon order of the court during plaintiff's minority.

In consideration of the payment by defendant of the amount of the compromise, plaintiff's father executed a full release on plaintiff's claim for all injuries "known and *unknown*" attributable to the accident. The release also provided that it was executed without reliance upon any statement or representation by defendant concerning the nature or extent of injuries or legal liability therefor.

Four years later, upon reaching his majority, plaintiff who was then represented by different counsel, filed the present petition to set aside the compromise. He alleged that his father employed the law firm of King and Ghidella to prosecute an action for personal injuries; that said attorneys did not conduct an independent investigation into the facts of the case, but, on the contrary, relied solely upon the representation of defendant's agents regarding the lack of liability of defendant; that upon inquiry by said attorneys defendant falsely and fraudulently, and with intent to deceive, advised said attorneys that defendant was guilty of no negligence;

that the attorneys believed and relied upon defendant's representation; that by wilfully concealing from and failing to advise plaintiff's father and his attorneys of the true facts, defendant induced and led said attorneys to recommend the acceptance of the offer of compromise of defendant; that defendant knew, or should have known, that plaintiff's injuries were sustained as the result of its negligence, which fact was unknown to plaintiff's father and attorneys; that the father and the attorneys were mistaken as to the extent and permanency of plaintiff's injuries; that no testimony was taken at the hearing except the father's; that no medical testimony was taken; that at no time was any mention ever made of the permanent nature of the injuries to plaintiff's right foot or to the extent of his capability to use a prosthesis; that upon the date of the compromise neither the plaintiff's father nor his attorneys knew the extent or the permanent nature of his injuries and relied solely upon the representations of defendant in reference to its liability; that consequently, the court was imposed upon in that it did not have a true representation of the facts as they actually existed or of the extent and serious nature of plaintiff's injuries, and that in reliance on said representation the court approved the compromise.

In an affidavit which was attached to plaintiff's petition, Dr. Fred D. Heegler averred that at the time of his original treatment of the plaintiff, from September 26 to November 30, 1951, his prognosis was that the plaintiff would recover from the injuries without residual effects; that when he again examined plaintiff from April 17, 1952, to the date of his affidavit he, for the first time, discovered residual effects from the injuries; that it was then and now his opinion that the disability was permanent; that the extent of plaintiff's capability to use the prosthesis had not yet been determined; that the maximum use would not exceed 20 per cent; and that he had made no report, either oral or written, to the law firm of King and Ghidella or to the court prior to January 31, 1952.

There was also introduced at the hearing an affidavit by Mr. Ghidella wherein he set forth that he had performed substantially all of the legal work in reference to the petition for compromise; that at that time he was informed that the injury to the plaintiff's foot was an ordinary fracture; that at no time had he any medical or nonmedical information that the injury was of a permanent nature and so represented the same to the superior court.

In opposition to plaintiff's motion, defendant filed an affi-

davit by James E. Gallagher, an adjuster for defendant's insurance carrier, and Louie T. Cravea, an eyewitness. In the Gallagher affidavit it was alleged that prior to settlement the affiant had discussed the accident with the driver and occupants of the car in which plaintiff was riding, with the driver of the truck and with various eyewitnesses; that he also had discussed the case with plaintiff's mother but not his father; that he had discussed the case but not the details thereof with Mr. Ghidella; that he had made no representation as to either the nature or extent of plaintiff's injuries, but that he did state to Mr. Ghidella that his investigation indicated the case was not one of liability on the part of the defendant.

The Cravea affidavit corroborated in general the comments in the Gallagher affidavit concerning the facts surrounding the collision as affecting liability. Also attached to the Gallagher affidavit were two letters from Mr. Ghidella to Mr. Gallagher. The first expressed a willingness to accept a settlement of $4,900—$1,400 representing the medical expense and $3,500 on account of general damages. The second letter acknowledged the acceptance of the settlement offered and advised that it would be presented to the court for approval.

It must be borne in mind that in reviewing the evidence so presented to the trial court we are bound by the rule on appeal so frequently quoted from *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689], as to warrant no further repetition. And this is true whether the determination of the trial court was predicated on issues of fact raised by conflicting affidavits or on conflicting evidence as to issues of fact. (*Rench* v. *Harris,* 76 Cal.App.2d 113, 118 [172 P.2d 576].)

From the record it appears that when plaintiff's motion to vacate the order approving the compromise was presented, the court had before it the record of the hearing at which the compromise was approved and the affidavits of the parties. Nowhere in the record was there any factual proof of the truth of the assertions of fraud and mistake as alleged in plaintiff's petition. But the record did contain the affidavits submitted by defendant wherein plaintiff's allegations were factually controverted. Additionally the record contained several statements by Mr. Ghidella in answer to particular questions by the court. Specifically he was asked concerning his recollection of the facts and circumstances leading up to the compromise, to which he replied that he talked to the officer, saw the statements made by other witnesses to the adjuster, but he did not see the statement of the truck driver, and that

". . . on the facts we gathered, there was no liability, and we thought the compromise was very reasonable . . ." Again in response to questions concerning the medical aspects of the case Mr. Ghidella stated in part:

"If Your Honor please, I would like to point out our reasoning in the matter. At that we didn't care what the report was. We didn't care whether he had four limbs removed. We had arrived at the conclusion that there was no liability whatsoever, so it was a poker game to try to determine 'how much can we get without forcing this to trial'; the result would have been the same if he was a quadruple amputee. We were not concerned with Dr. Heegler's prognosis. It just revolved on that one point: 'How much can we get without forcing this to trial', and that is what we did."

Gauged by the rules above noted, it necessarily follows that the action of the trial court in denying plaintiff's motion to vacate the order approving the compromise finds ample factual support in the record.

Although at the hearing on the petition now before the court only two grounds were urged—(1) fraud, and (2) mistake—and although it was conceded that the original proceedings to approve the compromise were conducted properly, plaintiff's present counsel, who came into the case subsequent to the hearing on the petition to set aside the compromise, now contend that the preponderance of the evidence shows that plaintiff's interest as a minor was not protected by the court, his father, or his father's attorney; hence the order, lacking support in the evidence, amounted to nothing more than an arbitrary declaration by the judge.

We cannot agree with the assumption contained in such contention. Plaintiff's previous counsel stated at the outset of the hearing on the motion to vacate that no attack was made upon the proceeding. In view of the facts and circumstances surrounding the hearing on the compromise and the contentions then advanced by plaintiff, we take such statement to mean that although the evidence on its face was sufficient, nevertheless the court and the parties had been imposed upon through the fraud of the defendant, and that all parties labored under a mutual mistake as to the permanency of plaintiff's injuries. Thus it would appear that the contentions now made by plaintiff's counsel are more in the nature of an attack upon his then counsel for failure to adequately investigate the case, and upon the court for accepting such inadequacy.

Because of the nature of the contention now made, we have

summarized the evidence in detail. So summarized we cannot now say that the trial court abused its discretion in denying the motion to vacate. The evidence was all to the end that the original attorneys had determined that because of the question of liability the case was not one to try; that it should be settled for whatever could be obtained, and hence the severity of plaintiff's injuries was not considered to the degree it would have been had the question of liability been otherwise. Such conclusion finds ample support in the record. Additionally there was the release signed by the father covering unknown and unanticipated injuries and specifically denying that it was executed in reliance upon any representation of any kind. (See *Berry* v. *Struble,* 20 Cal.App.2d 299 [66 P.2d 746]; *Kostick* v. *Swain,* 116 Cal.App.2d 187 [253 P.2d 531].)

The first portion of plaintiff's next contention is that section 1431 of the Probate Code is violative of the due process clauses of both the federal and state Constitutions in that plaintiff was deprived of property without notice or hearing, and for the further reason that he was denied his right to name a guardian and to disaffirm the compromise upon reaching his majority.

At the outset of any discussion of the constitutionality of the section involved, it must be remembered that a statute should not be declared unconstitutional unless it is clearly violative of a specific constitutional provision. And where there is reasonable doubt as to the validity of the act, its constitutionality should be affirmed.

Under the doctrine of *parens patriae* the state, acting through the Legislature, has the inherent power to provide protection to all persons *non sui juris,* and to make and enforce such rules and regulations as it deems proper for the management and control of their property and their affairs. Section 1431 is but a part of the general, comprehensive scheme for the regulation of a minor's property rights.

Plaintiff's contention regarding notice and hearing is answered by the case of *Burge* v. *City & County of San Francisco,* 41 Cal.2d 608 [262 P.2d 6]. There the mother of a 14-year-old minor filed a verified petition seeking approval of a compromise of damages for personal injuries suffered by the minor. Before reaching majority, the minor by his father as guardian ad litem, sought to recover for his injuries. The defendant, as a special defense, pleaded the previous compromise by the mother under the provisions of section 1431 of the code. The record showed that neither the plaintiff nor

his mother appeared or testified when the order approving the compromise was made. The court, in denying the petition to set aside the compromise, stated that while it would have been ". . . better practice to hold a hearing and take testimony, the statute does not require it." And, in a footnote there were set forth the provisions of rule 28(c) of the Superior Court rules wherein the attendance of the parties and the taking of evidence are said not to be mandatory.

The Burge case cited with approval *Rico* v. *Nasser Bros. Realty Co.*, 58 Cal.App.2d 878 [137 P.2d 861], where it was held: "This section authorizes the father to petition for the order, and does not require the appointment of a guardian, the appearance in court of the father or the minor, or the taking of testimony relating to the extent of the injuries. If orderly procedure, or the good judgment of the superior court, should suggest that any one of these acts should have been done, the failure to do so was merely an error or irregularity, committed within the conceded jurisdiction of the court."

The second portion of plaintiff's final contention also finds answer in what has heretofore been said concerning the inherent power of the Legislature in matters affecting minors. It necessarily follows that since the Legislature may provide for the institution of proceedings by statutory guardians, there appears to be no reason why it cannot designate the natural guardian as the person so to do.

The order is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied March 12, 1958, and appellant's petition for a hearing by the Supreme Court was denied April 9, 1958.

---

*Assigned by Chairman of Judicial Council.