[No. B019064. Second Dist., Div. Four. Aug. 25, 1986.]

NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SHANT MARDIROSIAN, a Minor, Real Party in Interest.

**COUNSEL**

Morris, Moore & Morris, James T. Moore, Blanck & Blanck and Herbert F. Blanck for Petitioner.

No appearance for Respondent.

Morton S. Zahler for Real Party in Interest.

## OPINION

**WOODS, P. J.**—This is an original proceeding in mandate. The question presented is whether the superior court can refuse to approve an uninsured motorist arbitration award to a minor which the court concludes is not in the minor's best interest notwithstanding the limiting provisions of Insurance Code section 11580.3.

Insurance Code section 11580.3, in pertinent part, provides that an uninsured motorist arbitration award to minors is to be deemed a "compromise" governed by certain provisions of the Probate Code. These Probate Code sections require, inter alia, judicial approval of any compromise of a minor's claim made by his or her parents. (Prob. Code, § 3500, subd. (b).) However, while requiring judicial approval of uninsured motorist arbitration awards to minors, section 11580.3 goes on to limit the grounds for disapproval to those enumerated in Code of Civil Procedure section 1286.2 for vacation of any arbitration award.

■ The specific ground for the court's refusal to approve the award was that certain medical evidence which suggested a severe latent injury was not developed or presented to the arbitrator, casting doubt upon the sufficiency of the award to the minor. Section 1286.2, however, does not permit vacation of an arbitration award because it is based on insufficient or incomplete evidence. The issue, then, is whether this express limitation as to minors can be overcome by any other statute or public policy consideration.

The facts are as follows:

On May 17, 1981, the minor, Shant Mardirosian (Shant), then 10 years old, was riding in his father's automobile when it was struck from behind. The uninsured motorist claims of Shant and his father, against the father's insurer, were submitted to nonjudicial arbitration pursuant to the arbitration provisions of the father's policy. (Ins. Code, § 11580.2, subd. (f).) Shant was examined by physician Gerald Sugarman for purposes of the arbitration proceedings.

Dr. Sugarman's report of September 1981 diagnosed "right knee pain, decreasing headaches and anxiety reaction" due to the accident. The prognosis was for no permanent impairment. Shant was to return for reexamination should his symptoms exacerbate.

Apparently, Shant's claim was not submitted to arbitration until April 1985, nearly four years after his examination by Sugarman. At the hearing,

Shant, through his father as guardian ad litem, was represented by counsel. The Sugarman report and reports by the insurer's examining physicians were submitted. Apparently, there was also testimony concerning Shant's injuries. The record does not include a copy of the arbitrator's award nor any other details of the arbitration proceedings.[1] An award of $3,300 was made to Shant and $15,000 was awarded to his father.

On August 27, 1985, Shant, by his father as guardian ad litem, filed a petition for compromise of the arbitration award in the superior court pursuant to Probate Code section 3500.

The insurer did not appear at the September 20, 1985, confirmation hearing and later asserted lack of notice. At the hearing, the court expressed its concern that Shant's headaches might indicate possible head injury. The court noted the possibility of latent traumatic epilepsy. The court, sua sponte, examined Shant. Shant said his headaches occurred on the crown of his head, and had persisted until the summer of 1985, and that, up to the end of the 1984-1985 school year, he had occasionally suffered dizzy spells when he went to bed. He said his school performance had significantly deteriorated, and he had missed "a lot" of school days due to these symptoms.

The court ordered an examination and report by a pediatric neurologist. The resulting report, dated October 5, 1985, diagnosed "a good possibility of complex partial seizures" and recommended further neurological testing. The report stated that it was premature to link Shant's symptoms to the 1981 accident.

After reviewing the October 5, 1985 report, the court refused to confirm the arbitration award. It instead vacated the award and "remanded" the matter back to the arbitrator for rehearing in light of the new evidence. (Code Civ. Proc., § 1287.) The court relied upon the general provisions of Probate Code section 3500 and Code of Civil Procedure section 187, as well as the common law doctrine of courts serving as "parens patriae" for minors, to overcome the specific restrictions found in Code of Civil Procedure section 1286.2 and Insurance Code section 11580.3.

The insurance carrier filed the present petition for mandate on February 21, 1986, and we issued the alternative writ.

---

[1]The record does not reveal the date of the arbitration award, what evidence was adduced there, whether findings were made, nor the reasons why the minor's continuing headaches and vertigo were not the subject of a follow-up medical examination.

## I

Insurance Code section 11580.3 (enacted in 1963) provides: "When an insured entitled to recovery under uninsured motorists' coverage is a minor, an arbitration award upon his claim shall be deemed to be a *compromise* and shall be governed by Chapter 2 (commencing with Section 1430 [now § 3500])[2] of Division 4 of the Probate Code; *provided, however, that the court may disapprove said award only on the grounds specified in Section 1286.2 of the Code of Civil Procedure.*" (Italics added.)

Code of Civil Procedure section 1286.2 was enacted in 1961 and provides five exclusive grounds for courts to vacate an arbitration award. None of these grounds cover the situation presented here.[3]

The present record does not suggest, nor does the real party minor contend, that the lack of a more current medical report for submission at the arbitration hearing was attributable to any misconduct or refusal by the arbitrator to continue the hearing or consider submitted material. Indeed, the record and the return to the alternative writ do not reflect what evidence was adduced at the arbitration hearing concerning the minor's then existing symptoms. Neither is there any indication that the award exceeded the power of the arbitrator. (See *Jefferson Ins. Co.* v. *Superior Court* (1970) 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880].)

The minor contends in his return that the closing, omnibus language in subdivision (e) of Code of Civil Procedure section 1286.2 (". . . or by other conduct of the arbitrators contrary to the provisions of this title") may be liberally read to include nonconsideration of material evidence which a party has failed to produce. Review of the referenced title 9 of part 3 of the Code of Civil Procedure shows no provisions upon which this argument could be validated.

---

[2]See Statutes 1979, chapter 726.

[3]Code of Civil Procedure section 1286.2 provides: "Subject to Section 1286.4, the court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

While there is some split in case authority concerning whether an arbitrator's error of law or fact may ever be the basis for vacating the award,[4] the circumstances in the underlying case do not qualify under even the more lenient line of cases, because no error of law or failure to determine a factual issue is attributable to the arbitrator here.

## II

The case law does not recognize exceptions to section 1286.2 based upon a party's failure or inability to produce evidence or the arbitrator's error on a question of fact.

The case perhaps most analogous to the present one is *Communications Workers* v. *General Telephone Co.* (1981) 127 Cal.App.3d 82 [179 Cal.Rptr. 204]. There a labor union sought to vacate an arbitration award under Code of Civil Procedure section 1286.2 because the arbitrator had refused to permit a second continuance to allow production of a witness and had rejected the union's hearsay evidence. However, it was shown that a second continuance had not been requested by the union's counsel. Thus, the arbitrator's "refusal" to grant a continuance was not misconduct violative of section 1286.2, subdivision (e). It was further held that subdivision (e) was not violated by the arbitrator's rejection of the labor union's hearsay evidence because that evidence was squarely controverted by other admissible evidence. Moreover, this court concluded that the arbitrator's rulings on credibility of evidence are not grounds for vacation of the award. This court pointed out: "We are cited to no authority, and know of none, that makes either section 473 of the Code of Civil Procedure or the general equity

---

[4]One line of cases holds that no error of law or fact by an arbitrator may serve as the basis for vacating an award and that sections 1286.2 and 1286.6 provide the exclusive grounds for vacating and correcting an arbitration award. (E.g., *State Farm Mut. Auto. Ins. Co.* v. *Guleserian* (1972) 28 Cal.App.3d 397, 402 [104 Cal.Rptr. 683]; *Durand* v. *Wilshire Ins. Co.* (1969) 270 Cal.App.2d 58, 61 [75 Cal.Rptr. 415].) The other, longer line of cases holds that an award may be vacated: (1) where the error of law or fact appears upon the face of the arbitration award and causes substantial injustice (*That Way Production Co.* v. *Directors Guild of America, Inc.* (1979) 96 Cal.App.3d 960, 965-966 [158 Cal.Rptr. 475]; *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 771 [137 Cal.Rptr. 580]; *Allen* v. *Interinsurance Exchange* (1969) 275 Cal.App.2d 636, 640-642 [80 Cal.Rptr. 247]; *Campbell* v. *Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105, 112 [67 Cal.Rptr. 175]) or (2) where the arbitrators decide a question of law in excess of their jurisdiction because only an issue of fact (extent of damage) is submitted for determination (*Jefferson Ins. Co.* v. *Superior Court, supra,* 3 Cal.3d at p. 403).

It has also been recognized to be a violation of subdivision (c) of section 1286.2 (misconduct of neutral arbitrator substantially prejudices rights of a party) where the arbitrator fails to consider and determine all the material questions necessary to determine the controversy submitted to arbitration. (*National Union Fire Ins. Co.* v. *Superior Court* (1967) 252 Cal.App.2d 568, 571-573 [60 Cal.Rptr. 535].)

powers of a trial court, applicable to the case before us. The Legislature has carefully set forth in section 1286.2 the grounds for vacating an arbitration award. Mistake or excusable neglect are nowhere set forth in those limited grounds." (*Id.*, at p. 87.)

Similarly, in *Felner* v. *Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 545 [86 Cal.Rptr. 178], it was held that a factual question submitted for determination to the arbitrator is not subject to judicial review for error under section 1286.2.

In *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.* (1946) 29 Cal.2d 228, 241-242 [174 P.2d 441], it was held, in construing the predecessor statute [former Code of Civil Procedure, section 1288] to section 1286.2, that where arbitrators consider all the evidence submitted to them and do not deny a party the right to submit evidence and present its case, no ground for vacating the award exists under the controlling statute.

### III

■ Respondent relied upon Code of Civil Procedure section 187 as conferring general jurisdiction in trial courts to do whatever is appropriate to effectuate exercise of their jurisdiction.[5]

This position is invalid for several reasons. First, section 187 itself restricts its scope to situations where jurisdiction is conferred upon the trial court by, inter alia, a statute but the precise means to effectuate it are not also set forth. In the present case, the trial court's jurisdiction to vacate an arbitration award is expressly restricted by statute. Second, fundamental rules of statutory construction render section 187 subservient to Code of Civil Procedure section 1286.2 and Insurance Code section 11580.3, because the latter statutes are both more specific and more recent. (See *In re Ward* (1964) 227 Cal.App.2d 369, 374-375 [38 Cal.Rptr. 650].)

### IV

■ The minor, in his return, makes several general challenges to the constitutionality and operation of Insurance Code section 11580.3. At the

---

[5]Section 187, enacted in 1872, provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

core of these challenges is his contention that the Legislature cannot limit the power of the superior court, acting in *parens patriae,* to vacate an arbitration award to a minor. While we, like the court below, may doubt the wisdom of such limitation, we are unable to say that it exceeds the Legislature's power.

We agree with the minor that, in Insurance Code section 11580.3, the Legislature has given to minors with one hand and taken away with the other. Section 11580.3 requires judicial approval of arbitration awards to minors under the uninsured motorist statute. By contrast, there is no corresponding mandate that such awards to adults be judicially confirmed. As to adults, the procedure is voluntary. (Code Civ. Proc., § 1285.)[6] Hence, it is clear that the Legislature intended there to be some judicial protection of minors with respect to awards to them made under the uninsured motorist statute.

This conclusion is strengthened by the legislative history surrounding section 11580.3, which observes that the purpose of the section was to protect minors by invoking Probate Code sections governing the settlement of minors' claims. *(Committee Report-Administration of Justice* (1963) 38 State Bar J. 485, 503; *Selected 1963 Legislation* (1963) 38 State Bar J. 729-730.) Among the provisions of those sections is the requirement that all compromises must be judicially approved. (Prob. Code, § 3500, subd. (b).) This requirement is expressive of the "inherent power" of the state "acting through the Legislature," "to provide protection to all persons *non sui juris,* and to make and enforce such rules and regulations as it deems proper for the management and control of their property and their affairs." *(Darlington* v. *Basalt Rock Co., Inc.* (1958) 157 Cal.App.2d 575, 581 [321 P.2d 490].)

The Legislature's power to make such rules as it deems proper to protect minors necessarily encompasses the authority to restrict such protections in the name of other, competing interests. While, for instance, the statute of limitations for bringing actions is normally tolled for minors during the period of their minority, the Legislature has exempted from this general rule suits by minors against public entities. (Code Civ. Proc., § 352, subd. (b).) Hence, minors must bring their actions against public entities in the same period of time as adults. *(Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 583 [121 Cal.Rptr. 842].) Similarly, in section 11580.3 the Legislature protects minors by requiring judicial approval of

---

[6]As between adults, an arbitration award that has neither been confirmed nor vacated has the same force and effect as a contract in writing between the parties. (Code Civ. Proc., § 1287.6.)

arbitration awards to them but permits the court no greater power to disapprove awards to minors than it may exercise over awards to adults.

It may be true, as, in fact, this case illustrates, that this restriction on the superior court's power to act in *parens patriae* may lead to hardship and even unjust results. Here, despite evidence of the minor's continuing and severe medical problems, perhaps caused by the accident which was the subject of the arbitration, the arbitration award cannot be vacated except on the grounds set forth in Code of Civil Procedure section 1286.2. Hence, the courts are placed in the anomalous position of being charged with the protection of minors but limited drastically in their ability to afford that protection.

## V

Unfortunately, nothing in the foregoing discussion assists the minor in the following examination of his specific challenges to the statute.

### A.

It is contended that Insurance Code section 11580.3 is unconstitutional because it "operates to deprive one of property without due process of law." This contention has no merit.

It appears that neither section 11580.3 nor Code of Civil Procedure section 1286.2 has yet been constitutionally challenged, but it is evident that these statutes do not deprive adults or minors of property without due process.

The nonjudicial arbitration of uninsured motorists' claims results from provisions of the contract of automobile insurance mandated (at the insured's option) by Insurance Code section 11580.2, subdivision (f). The insured elects to take the uninsured motorist coverage and to be bound to the arbitration of disputes as regulated by statute. Plenary civil discovery is guaranteed in the arbitration. (Ins. Code, § 11580.2, subd. (f).) A full evidentiary hearing is provided where, unlike trials, both admissible and inadmissible evidence may be submitted. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd., supra,* 29 Cal.2d at p. 241.) All material evidence must be considered. (Code Civ. Proc., § 1286.2, subd. (e).) The arbitrators must determine all the issues submitted in the arbitration. (Code Civ. Proc., §§ 1283.4 and 1286.2, subd. (e).) The hearing is not reported and findings of fact are not required.

Parties are thus afforded the *opportunity* to fully develop and present their evidence to a neutral arbitrator. It must be recognized that the statutory scheme, as a whole, provides for a relatively informal, non-judicial resolution of disputes concerning rights under insurance contracts that the insured might otherwise not even have been able to procure. The arbitration process is not a personal injury civil action. We cannot conclude that the arbitration statutes unreasonably or arbitrarily deny the process which is due by their limitation of the grounds upon which arbitration awards may be vacated.

### B.

The minor also argues that Insurance Code section 11580.3 is unconstitutional in its application because it limits the ability of the superior court to protect minors despite the legislative purpose to protect minors by requiring judicial review of arbitration awards made to them. For reasons discussed in part IV of this opinion, we reject this contention.

As the minor himself concedes, the state carries out its powers under the doctrine of *parens patriae* through the Legislature. Moreover, the Legislature may, pursuant to that power, protect minors "as it deems proper." (*Darlington* v. *Basalt Rock Co., Inc., supra,* 157 Cal.App.2d at p. 581.) The express language of section 11580.3 reflects a legislative judgment that only limited protection should be extended to minors. While one may argue with the wisdom of that judgment, it is, nonetheless, a proper exercise of the legislative power.

### C.

Also without merit is the minor's related claim that authority for respondent's ruling lies in its application of the doctrine of *parens patriae*. The minor cites no authority for the proposition that the doctrine of *parens patriae* can be applied by the courts to give minors special rights in civil actions or proceedings contrary to express statutory mandate. As we have already demonstrated, that doctrine finds expression through acts of the Legislature. In section 11580.3, the Legislature has acted.

The minor's reliance on *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 652 [169 P.2d 442], is misplaced. In *Berry, supra,* the minor's mother, functioning as the minor's guardian ad litem, stipulated to dismissal of her support action should blood tests show that defendant was not the minor's child. Physicians conducting the test concluded that defendant was not the minor's child and he moved to have the action dismissed. His motion was denied and his

paternity was subsequently established at trial. On appeal, the defendant argued the case should have been dismissed pursuant to the stipulation. The court, however, disagreed, holding that the guardian ad litem could not waive substantial rights of the minor, such as the right to trial, without seeking prior judicial approval based upon evidence of the best interests of the minor. *Berry* reasoned that the trial court is in reality the guardian ad litem and the guardian is merely an officer and agent of the court that appointed him.

Here, there is no claim that the minor's guardian ad litem waived any of his material rights, and a full hearing was held regarding confirmation of the award. Hence, *Berry* is inapposite.

### D.

■ Also without merit is the minor's contention that the state's public policy of protecting minors is so great as to overcome the force of specific statutory restrictions. Sections 1286.2 (Code Civ. Proc.) and 11580.2 (Ins. Code), like statutes in general, are regarded as manifestations of legislative public policy intent. (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) Hence, a statute enacted specifically to establish restrictions on the ability of minors to vacate uninsured motorist insurance arbitration awards cannot be overcome by other statutes reflecting the general public policy of protecting the interests of minors. (*In re Shull* (1944) 23 Cal.2d 745, 750 [146 P.2d 417]; *In re Ward, supra,* 227 Cal.App.2d at pp. 374-375.)

### E.

■ The minor also argues that the arbitrator failed to make a determination of all questions submitted to him, as required by Code of Civil Procedure sections 1283.4 and 1286.2, subdivision (e), because he did not determine that the minor had a latent permanent neurological injury. We reject this argument.

Nothing in the record suggests that the arbitrator did not consider all the evidence submitted or that he did not determine the extent of injury to the minor in fixing the award. It has not even been shown that any evidence was submitted suggesting such permanent injury. A party's unilateral failure to submit evidence cannot be characterized as a failure by the arbitrator to determine all issues submitted so as to require vacation of the award. (See *Gibbons* v. *Travelers Ins. Co.* (1969) 274 Cal.App.2d 819, 823-824 [79 Cal.Rptr. 438].)

### F.

The minor also contends that the arbitration award was rendered due to extrinsic mistake, e.g., his ignorance of the potential permanent injury at that time. The absence of merit in this contention is demonstrated by *Gibbons* v. *Travelers Ins. Co., supra,* 274 Cal.App.2d 819.

In *Gibbons* v. *Travelers Ins. Co., supra,* 274 Cal.App.2d 819, a three-year-old boy was injured by another boy and sustained substantial head injuries that were diagnosed as nonpermanent in nature. One year after the accident, the father petitioned the superior court for confirmation of a compromise of the minor's claim pursuant to then Probate Code section 1341 (now § 3500). The petition, approved by the court, represented the father's belief that no permanent injuries existed and waived entitlement to pursue a claim on any later-discovered injuries. Two years after the court's confirmation of the compromise, the minor was diagnosed as having severe hearing loss directly resulting from the earlier head injury. The minor, through his father, filed suit to set aside the prior court confirmation on the ground, inter alia, of a mutual extrinsic mistake of fact. ██ Quoting extensively from the analysis of extrinsic fraud and mistake in *Westphal* v. *Westphal* (1942) 20 Cal.2d 393, 397-399 [126 P.2d 105], the *Gibbons* court concluded, at pages 823-824, that where a civil party has not been prevented from knowing of and exercising his opportunity to have his day in court or from presenting such evidence and argument as he has prepared for himself, the party's own inability or failure to learn of material facts does not constitute *extrinsic* mistake allowing vacation of judgment.

### VI

Let a peremptory writ of mandate issue directing respondent to vacate its order of November 22, 1985, in Los Angeles Superior Court case No. NCP 12100 G, entitled In re Shant Mardirosian, which denied the minor's petition for confirmation, and issue a new and different order granting that petition. Petitioner to recover costs.

McClosky, J., and Arguelles, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied November 12, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.